STATE of Missouri, Respondent,

v.

Alfred Anthony FRANCO, Appellant.

No. 62731.

Supreme Court of Missouri,
Division No. 1.

Dec. 8, 1981.

Rehearing Denied Jan. 12, 1982.

Ralph Marcus and C. Clifford Schwartz, Clayton, for appellant.

Sara Rittman, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT R. WELBORN, Senior Judge.

Appeal from judgment of conviction on jury verdict and sentence to life imprisonment, without right to parole until 50 years served, for capital murder. § 565.001, RSMo 1978.

On Friday, July 6, 1979, a group of people were drinking beer at the home of Michael and Linda Ellis in St. Ann, St. Louis County, Missouri. At around 11:30 P.M., appellant Alfred Franco arrived at the party, uninvited. He lived in the vicinity and was known, at least by sight, to some of the other persons present.

Appellant and Randall Deffenderfer became involved in an altercation and Franco was thrown to the ground and struck several times. The appellant then left but returned in about 15 minutes, carrying a rifle. He fired a shot at Deffenderfer, striking him in the hip. Appellant then left. Police were called to the scene, but, by prearrangement, the persons present agreed that, because the victim had had prior difficulties with the law, they would tell police that they did not know who did the shooting. That was the account received by the police at that time.

The next afternoon, Detective-Lieutenant O'Rando of the St. Ann Police Department interviewed the victim in the hospital and Deffenderfer told the officer that appellant had shot him. The officer went to the Ellis residence and found a shell casing in the driveway. Upon returning to the police station he interviewed other persons who had been present at the time of the shooting. They named Franco as the person who had fired the shot.

At around midnight Saturday, shots were fired into the residence where Deffenderfer resided with his parents, the Ellis house and the residence of Robert James Bergmann. All of the houses were in the same general area of St. Ann. Bergmann had been at the Ellis house at the time of the shooting

598

of Deffenderfer. Earlier on Saturday evening, he had told Lieutenant O'Rando that Franco had shot Deffenderfer.

Bergmann's in-laws lived with him. At the time the shots were fired into his house, Bergmann was in the basement and his brother-in-law, Carl Reisinger, was upstairs watching television. Bergmann heard a "thump" on the floor above him and went upstairs to find Carl on the floor at the front door, with a wound in the head. Carl died on July 29 from the gunshot wound he had received.

Lieutenant O'Rando was still at the station when police received a call about the shooting into the Deffenderfer residence. He was preparing to go there when a second call was received within a short time.

When the second call was received, Lieutenant O'Rando went to Franco's residence, some five blocks from the Reisinger residence.

As the officer drove up to the Franco residence, Franco also drove up and stopped in front of his residence. Lieutenant O'Rando told Franco to get out of his car with his hands up. Franco did so and the officer told him to "hit the ground." As Franco did so, the officer saw a thirty-round magazine fall from his shirt pocket. A rifle was seen on the front seat of the Franco automobile. It was seized by the officer and Franco was taken to the police station.

Subsequently ballistics tests showed that bullets found at the residences into which shots had been fired had come from the .30 caliber M–1 carbine taken from Franco's automobile.

By indictment filed August 6, 1979, Franco was charged with assault in the first degree in the shooting of Deffenderfer and with capital murder in the death of Reisinger. At his trial on the latter charge, which began November 3, 1980, the appellant was found guilty of capital murder and a sentence of life imprisonment, without possibility of parole until a minimum of 50 years had been served, was imposed.

On this appeal, the first contention of appellant is that his constitutional right to a speedy trial was violated and that he did not receive a trial within 180 days of his arraignment, in violation of statutory requirements. He contends that the trial court erred in failing to overrule his motion to dismiss for failure to grant a speedy trial.

Although appellant asserts a violation of constitutional guarantees of a speedy trial, his argument is based upon the claim that he was not brought to trial within the 180-day limit specified by the Missouri Speedy Trial Act, effective September 1, 1978, (§ 545.780, RSMo 1978), from the date of his arraignment on August 10, 1979.

The motion to dismiss was filed on October 20, 1980 and overruled on October 24, 1980. Trial began on November 3, 1980.

■ A major factor in the trial delay is related to the pretrial determination of appellant's mental capacity.

The appellant's request for psychiatric examination was filed on November 2, 1979 and examination was ordered by the court on that date. The issue of capacity to stand trial was not resolved until June 9, 1980, when the court, on the basis of reports of three psychiatric examinations and hearings held on May 15 and June 2 concluded that the defendant was fit to proceed.

There were numerous previous settings of hearing on the psychiatric issue which were continued from time to time. In some instances the report of the examining physician had not been received by the date set for the hearing. After the first psychiatric report had been filed, the state requested an examination and the defendant requested a second examination. These requests were granted. Resolution of the issue was further protracted by reason of the court's permitting the public defender, appointed to represent defendant, to withdraw on March 24, 1980, because defendant had filed a lawsuit against his attorney in the federal court.

Subparagraph (1)(a) of paragraph 3 of Section 545.780, RSMo 1978, excludes, in

computing the time within which a criminal trial must commence, "(d)elay resulting from an examination of the defendant and hearing on his mental competency * * *." Such exclusion is applicable in this case. Appellant attacks the numerous continuances of the psychiatric hearing for the failure of the court to make the findings required by subparagraph (5) of paragraph 3 of Section 545.780. Such provision relates to continuances of trial settings and continuances of psychiatric hearings do not require such findings in order to exclude the period required for resolution of the competency issue.

Appellant also calls attention to Section 552.030 4., RSMo 1978, which requires a psychiatric examination ordered by the court to be completed within 60 days. That provision was added by an amendment which became effective August 13, 1980. Laws of Mo., 1980, pp. 503, 517–518. Therefore, it was not in effect at the time of the examinations here involved. In any event, that provision limits the time for the examination, not for the determination by the court. It should be noted that in this case the first examination was ordered on November 2 and the report, dated January 10, 1980, was filed on January 21, 1980. The subsequent examinations, ordered on January 22 on behalf of the state and on January 24 on behalf of the defendant, were filed on February 20, 1980 and April 4, 1980, respectively.

On this record, the period from November 2, 1979 to June 9, 1980 was properly excludable in computing the 180-day period within which defendant was required to be tried.

 However, excluding that time, more than 180 days had elapsed from the defendant's arraignment on August 10, 1979 and his motion to dismiss filed on October 20, 1980 and overruled on October 24.

In this Court, the state concedes that the 180-day limitation ran from the date of arraignment until the order for psychiatric examination, a period of 84 days. It also accepts the running of the time from the court's determination of appellant's competency to stand trial on June 9, 1980 to July 14, 1980, a period of 35 days.

At the time of the court's finding on June 9 of defendant's capacity to stand trial, it ordered the case placed on the trial docket of July 14, 1980. On that date, the cause was continued at the request of the defendant to September 8, 1980. The state would toll the running of the 180-day period between those two dates. The appellant contends that such period is not excludable because the trial court, in ordering the continuance, gave no reason for its conclusion stated in the order, that the ends of justice served by the granting of the continuance outweighed the interests of the defendant and the public in a speedy trial, as required by Section 545.780 3. (5)(a).

The defendant's request of July 14 for a continuance gave as reasons for the request that pretrial motions had not been heard. The order set such motions for hearing on July 18. No such motions were filed and no order entered with respect to them on the latter date. A delay for hearing pretrial motions is excludable under Section 545.780 3. (1)(c), without the necessity of further findings by the trial court. However, the state does not rely upon that exclusion.

The further reason stated for the continuance was "depositions to be taken." The state, in effect, argues that the statement of the reason for the continuance was the equivalent of a finding on the part of the trial court that the defendant's need to take depositions "outweigh(ed) the best interests of the public and the defendant in a speedy trial."

On August 29, 1980, the case was at the request of the defendant continued to September 29, 1980 "peremptorily." The order states no reason for that continuance. On September 16, 1980, the cause was continued at the request of the defendant "for further trial preparation" and set peremptorily for October 6, 1980. The order contained none of the findings required by Section 545.780 3. (5)(a), but again the state would equate the statement of the reason for the continuance with a finding that the defendant's need for further trial prepara-

tion outweighed his or the public's interest in the right to a speedy trial.

On September 29, 1980, counsel for defendant was permitted to withdraw for reasons " * * * stated in an oral hearing before the court this date as regards an incident (not otherwise explained) occurring in the county jail on 9–28–80 at approximately 9:00 P.M."

New counsel was appointed October 1, 1980 and the cause continued at defendant's request for that reason to October 27, 1980. New counsel filed the motion to dismiss on speedy trial grounds on October 20. The motion was heard and overruled on October 24, with no statement of reasons for the court's action. See § 545.780 5.

In the meantime, on October 20, the case had been continued to November 3 at the request of the state because a necessary witness was not available. The trial began November 3 and concluded with a guilty verdict on November 6.

The language of Section 545.780 3. (5)(a) should make it obvious that the granting of a continuance in a criminal case should no longer be treated perfunctorily merely because it is requested by the defendant. The speedy trial law is not designed for the benefit of the defendant alone. The public also has a right to have criminal cases determined promptly and a request for a continuance, even though coming from the defendant, must be viewed in the light of the public interest. See Frase, *The Speedy Trial Act of 1974*, 43 U.Chi.L.Rev. 667, 668–669 (1976). In this case, the court failed to make the requisite findings with respect to the continuances, thereby precipitating the question now presented.

However, the Missouri statute does not mandate dismissal merely upon a showing that more than 180 nonexcludable days had elapsed since arraignment with no trial. Under paragraph 5 of Section 545.780, if the defendant is not brought to trial within 180 days, "the trial judge may dismiss the information or indictment upon motion by the defendant and a *showing by the defendant that the failure to have the trial commence within time limits specified herein*

*was occasioned by the state.*" (emphasis supplied)

This provision was considered in *State v. Richmond*, 611 S.W.2d 351 (Mo.App.1980). In that case the court held that a showing on the part of the defendant that his trial had not begun within the specified time made a prima facie case under the statute and that the burden then devolved upon the state to show that the delay was attributable to delays excluded by the statute. In reaching this conclusion, the court relied in part upon a holding to that effect with respect to the time limit specified in the Agreement on Detainers (§ 222.160, RSMo 1978). *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 59–60[6] (Mo.App.1980).

In *Richmond*, the question involved the 60-day period between an order for new trial and trial. § 545.780 4. A new trial was ordered on April 9 and trial not held until August 30. One continuance was granted because all judges were engaged in trial at the date of the first assigned trial date of June 12. The case was reset on July 2 for August 2 and subsequently continued from that date to August 30 at the request of the state.

In holding that the record called for a finding that the delay was "occasioned by the state," the court, noting the obligation on the state to bring the case to trial (*Barker v. Wingo*, 407 U.S. 514, 529–531, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972)), stated: "A delay may be 'occasioned' by the state by mere neglect, by failure actively to move the case forward, by simple inertia, when the delay could not be said to have been 'caused' thereby." 611 S.W.2d 357.

On the record in *Richmond*, there is no reason to disagree with the result reached by the court of appeals. In that case, the record showed no action on the part of the defendant which contributed to the delay and the onus therefor was properly laid upon the state.

This case presents a different situation. With the exclusion of the psychiatric examination time, the June 9 setting for the July 14 trial docket was well within 180 days of

defendant's arraignment. The continuance at the request of the defendant to September 8 still provided a setting within the 180-day limit. The continuances at defendant's request to September 29 and October 6 were beyond the 180-day period. The failure to meet the October 6 setting was the result of an "incident" in the jail on September 28 which resulted in the withdrawal of defense counsel. Obviously, newly appointed counsel would require time for preparation, which was granted by the court. The record here is silent as to the nature of the incident which resulted in counsel's withdrawal. The record does indicate that an oral hearing was held regarding it but nothing indicates that the matter was in any respect attributable to the state.

When defendant's motion to dismiss was filed on October 20, more than 180 days had elapsed since defendant's arraignment. The psychiatric examination period was properly excludable. In none of the continuances at the request of the defendant did the trial court make the finding required by Section 545.780 3. (5)(a) in order to make the delay therefrom excusable. However, if the defendant was to receive relief under Section 545.780 5., he had the burden of showing not only the passage of more than 180 days but the further burden of showing that the failure to bring him to trial within that time was "occasioned" by the state. *State v. Newberry,* 605 S.W.2d 117, 123–124[9] (Mo.1980).

On the basis of the record in this case, the trial court would have had no basis for finding that the defendant had sustained the latter burden. The delay was not caused by positive action by the state nor may it be attributed to inertia or neglect (*Richmond*) on the state's part. The delay was occasioned by the necessity of taking depositions by the defendant (depositions were filed on behalf of the defendant), for "further trial preparation" by the defendant, and by the withdrawal of the defense counsel shortly before a trial setting. The only delay attributable to the state was the continuance from October 27 to November 3 because of the unavailability of an essential witness, an excludable period under Section 545.780 3. (2).

Appellant's motion to dismiss under the speedy trial law was properly overruled by the trial court.

■ Appellant's second contention on appeal is that the provision of Section 565.008 for a sentence to life imprisonment without possibility of parole for 50 years upon conviction of capital murder when the death sentence is not imposed is unconstitutional. The contention is that such provision conflicts with Section 549.261 2. which grants a right to a hearing before the State Board of Probation and Parole to any prisoner of the department of corrections who has served two thirds of his time or two years on his sentence, whichever is the shorter period.

Appellant's constitutional argument is difficult to follow, but it appears to be premised on the theory that in authorizing the court to impose a life sentence without possibility of parole, the legislature conferred upon the judicial branch a power properly belonging to the executive branch (Board of Probation and Parole) in violation of Section 1, Art. II of the Missouri Constitution. The appellant offers no authority in support of his position.

The determination that one punishment for capital murder should be a sentence to life imprisonment without possibility of parole until 50 years' imprisonment had been served was a legislative action in the exercise of the legislative function to fix the punishment for crime. *State v. McGee,* 361 Mo. 309, 234 S.W.2d 587, 590[4, 5] (Mo. banc 1950). The legislature is the source of the authority of the State Board of Probation and Parole. The limitation upon the authority of that agency which Section 565.-008 in effect imposes in case of conviction for capital murder does not involve the separation of powers mandated by Section 1 of Article II.

A related constitutional objection was rejected in *State v. Olinghouse,* 605 S.W.2d 58, 63[4] (Mo. banc 1980). Appellant "disagrees" with Olinghouse, but offers no argument which calls for reconsideration of that case.

Appellant next complains that evidence of the assault on Deffenderfer was improperly admitted in evidence because it constituted evidence of a separate offense, not charged by the indictment on which he was tried. Appellant's argument is that, on a capital murder charge, the only permissible evidence of other offenses is evidence to support the aggravating circumstances specified by Section 565.012 as sufficient to support a death sentence. He makes the further argument that at least one aggravating circumstance is necessary to support a charge of capital murder and that the indictment in this case is insufficient for its failure to include a specification of the aggravating circumstance in this case.

To answer the second contention, Section 565.012 specifies the circumstances which may justify the imposition of the death penalty in a capital murder case. Section 565.001 defines capital murder and specifies its elements. The indictment in this case sufficiently charged the offense in the statutory language.

As for the complaint regarding the admission of evidence, Section 565.012 does not change the rule of evidence controlling the admissibility of evidence of other offenses. One of the well-established exceptions to the general rule which limits evidence to the offense charged is that evidence which shows a motive for the offense charged may be admitted even if it shows the commission of another crime. *State v. McDaris*, 463 S.W.2d 809, 812[2, 3] (Mo. 1971); *State v. Dodson*, 556 S.W.2d 938, 948[16, 17] (Mo.App.1977). The evidence of the shooting of Deffenderfer showed a motive for the activity of the defendant the next night, including the killing of Reisinger. Appellant's claim of error is without merit.

Appellant next complains of the admission of a rifle, ammunition, spent shells and other items taken by Lieutenant O'Rando from the person of the defendant and from his automobile at the time of defendant's arrest. Appellant's contention is that the arrest without a warrant was without probable cause and that the seizure of such items constituted an unlawful search and seizure in violation of constitutional guarantees.

No motion to suppress the use in evidence of these items was filed prior to the trial. In the cross-examination of the officer, defense counsel sought to make an oral motion to suppress which the trial court rejected as untimely. The court further noted that the officer had adequate grounds for the arrest of the defendant and authorized the seizure in that connection.

Disregarding the noncompliance with Section 542.296, requiring a motion to suppress to be filed in advance of trial, the evidence clearly supported the trial court's conclusion that defendant's arrest was based upon probable cause. A peace officer who has reasonable cause to believe that a person has committed a felony may arrest that person without a warrant. *State v. Whorton*, 487 S.W.2d 865 (Mo.1972). At the time of the defendant's arrest, the arresting officer had been told by the victim that the defendant had shot him. The officer had similar information from eyewitnesses. Such information was sufficient to give the officer reasonable cause for the arrest of defendant for shooting Deffenderfer. *Whorton*.

As an incident to a lawful arrest, the officer could search the appellant. *State v. Cantrell*, 310 S.W.2d 866, 870[7] (Mo.1958).

Items taken from the automobile were in plain view of the officer, justifying their seizure. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1967).

By his next point on appeal, appellant has combined four separate assignments of error, found in his motion for new trial, and asserts that the combined effect of such errors was to produce a verdict based upon passion and prejudice.

The first matter involved the giving of MAI–CR 2.01. The court read the instruction as it appeared in the original version of MAI–CR (1974). Defense moved for a mistrial because MAI–CR (2d) had superseded

the original 2.01. The court overruled the motion and read 2.01 as it appears in MAI–CR 2d. The only difference between the two versions of the instruction is that the original, in the portion dealing with witness credibility, used the pronouns "he" and "his." MAI–CR 2d uses "witness" or "witness'" in lieu of the pronouns. Obviously, the differences are minor and the trial court properly refused the requested mistrial.

The second matter relates to the objection to the prosecutor's opening statement in which he described the events of the previous evening. As has previously been found, evidence of those events was properly admissible and the prosecutor had the right to include that matter in his opening statement.

The third instance cited by appellant involved a question asked by the prosecutor on redirect examination of Lieutenant O'Rando.

In cross-examination of Lieutenant O'Rando, defense counsel sought to discredit the state's evidence by questions directed at the fact that the state's witnesses at first said they did not know who had shot Deffenderfer and later named appellant as the assailant. On redirect examination, the prosecutor asked:

"Lieutenant O'Rando, Mr. Schwartz also asked you, I believe, if you thought it was unusual for these witnesses to prefer to tell you they did not know who had shot Deffenderfer and come in the next day and tell you they did."

At this juncture, defense counsel moved for a mistrial, contending that the question insinuated other criminal activity on the part of the defendant. The motion for mistrial was overruled and the question remained unanswered.

Appellant now asserts that the question insinuated that appellant had on other occasions intimidated witnesses. No such suggestion appears in the question. The question was a proper response to the cross-examination by defense counsel and afforded no basis for a mistrial.

Appellant's fourth assertion deals with the response of the jury foreman when the jury returned with its verdict. According to the transcript, the foreman read the verdict as follows:

"We, the jury, having found the defendant, Alfred Anthony Franco guilty of capital murder, fix the punishment at imprisonment for life by the division of corrections without eligibility for probation or parole, until the defendant has served a minimum of fifty years of his sentence."

The transcript indicates no objection by the defense counsel at this juncture. The legal file includes a signed verdict "We the jury find the defendant Alfred Anthony Franco guilty of capital murder, as submitted in Instruction No. 10." The transcript indicates that following the reading of the verdict, the court directed the foreman to sign a verdict which fixed the punishment at that required by Section 565.008, life imprisonment without eligibility for parole until 50 years had been served. Such verdict likewise appears in the legal file.

Appellant would deduce from the foregoing that the foreman had led the jury to a finding which they were not authorized to make under the instruction which submitted only guilt or innocence and made no reference to punishment. At the most, accepting the transcript version of the affair, the incident would indicate only that the foreman or some member or members of the jury were aware of the punishment for capital murder where the death penalty was not requested. Such knowledge provides no evidence of passion and prejudice. The verdict as read was in the form ultimately provided. The defendant was in no manner prejudiced.

Having found that none of the incidents relied upon formed any basis for a claim of error on the part of the trial court, the combined effect of the incidents cannot be relied upon to support the claim that the verdict was the result of passion and prejudice.

■ Although it is doubtful that there was evidentiary basis for it, the court gave,

at the request of the defendant, Instruction No. 14 in the form of MAI–CR 2d 2.37.1 3, on the question of whether the defendant acted knowingly in the shooting of Reisinger. The court also gave Instruction No. 8, defining "knowingly" in the language of MAI–CR 2d 33.01. However, the instruction contained only the first paragraph of the definition:

"(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist."

Omitted was the second paragraph:

"With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result."

On this appeal, appellant complains that Instruction No. 8 was not a proper instruction under the law, is incomplete and does not make proper sense, is legally inaccurate and conflicted with Instruction No. 14.

Paragraph Third of Instruction No. 10, the verdict-directing instruction on capital murder, read:

"Third, that the defendant knew that he was practically certain to cause the death of Carl Reisinger, * * *."

The repetition of practically the same language in Instruction No. 8 was unnecessary. Reading the instructions as a whole, the question of the defendant's acting "knowingly" was adequately submitted to the jury. There was no conflict between Instructions No. 8 and No. 14.

Appellant contends that his motion for a directed verdict of acquittal at the close of all of the evidence should have been sustained. He bases the motion, in part, upon his claim of the inadmissibility of the evidence of the events of the evening prior to the killing, a claim which has been rejected so that this portion of the argument deserves no further consideration.

■ The second basis for his contention is that all of the psychiatric evidence showed that the defendant had a mental disease or defect excluding responsibility.

There is no need to detail the psychiatric testimony. Appellant's argument ignores

Section 552.030 7., RSMo 1978, which provides for a presumption of freedom from mental disease, sufficient to take the case to the jury in the face of evidence to the contrary. This provision precludes any complaint based upon the weight of psychiatric testimony. *State v. Dalton*, 587 S.W.2d 644, 646[3] (Mo.App.1979).

■ At the opening of the defendant's case, the court instructed the jury, in accordance with Section 552.030 6, that testimony of physicians to any statement made to them by the defendant in the course of psychiatric examination should be considered only in connection with the issue of mental capacity and should not be considered in determining whether or not the defendant did or did not do the act charged. The two psychiatrists called by defendant testified to no statements involving the shooting of the victim. A third psychiatrist, Doctor Paraga, called by the state as a rebuttal witness, was asked whether or not the defendant told him about the circumstances of the crime charged. Over defense objection that the question called for hearsay, the witness testified that appellant said he did not intend to kill the victim, that it was a mistake, and he had had difficulties with the victim's brother-in-law, that the defendant was remorseful and told him that he wanted to "get it out of [his] chest." The witness later cited the defendant's remorse as evidence of his ability to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law.

Among the written instructions to the jury was Instruction No. 7, to the same effect as the previous oral instruction on the psychiatric testimony.

On this appeal, appellant now asserts that the admission of Doctor Paraga's testimony was prejudicial error. He characterizes the testimony of the doctor as "damning hearsay" but offers no authority which would avoid the well-established exception to the hearsay rule pertaining to admissions on the part of a criminal defendant.

By his reply brief, appellant also complains of the trial court's failure to instruct the jury in accordance with Section 552.030 6. at the time of the admission of the testimony now questioned. As above noted, the jury had been properly instructed prior to the reception of the psychiatric testimony, there was no request for a repetition of the instruction at the time of Doctor Paraga's testimony and the jury was properly instructed in writing on the subject upon submission of the case to the jury.

In these circumstances, the failure of the trial court to repeat the instruction at the time of Doctor Paraga's testimony was not reversible error. *State v. Speedy*, 543 S.W.2d 251, 256–257[9–13] (Mo.App.1976).

Judgment affirmed.

MORGAN, P. J., BARDGETT and RENDLEN, JJ., and HOUSER, Senior Judge, concur.