STATE of Missouri, Respondent,

v.

Jeffrey E. REED, Appellant.

No. WD 32368.

Missouri Court of Appeals,
Western District.

Sept. 21, 1982.

Theodore Kranitz, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., and WASSERSTROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

On an information charging manslaughter by culpable negligence in the operation of a motor vehicle, the jury found defendant guilty and assessed punishment at six months in the county jail. From judgment and sentence entered accordingly, defendant appeals. We affirm.

## I.

For his first point, defendant complains that his motion to dismiss should have been sustained because of the state's failure to afford him a speedy trial as required by Section 545.780.[1] This assignment subdivides into two parts, each of which will be discussed in order.

A. *The ten day requirement.* The information here was filed December 12, 1979. The arraignment did not take place until February 2, 1980, 21 days later. This delay violated Section 545.780–1 which provides that the arraignment "shall be held within ten days from the filing of the information. . . ."

However, that violation has been waived by the defendant. Following his arraignment, he took a change of venue, engaged

---

1. All sectional references are to RSMo 1978.

in considerable discovery, and sought or participated in seeking two continuances, both of which were granted. Those procedural events were initiated by and for the ostensible benefit of defendant after his arraignment during a span of time when he knew he had not previously been timely arraigned. His inordinate delay in waiting until the time of trial to move for dismissal of the information on the ground that he had not been timely arraigned, coupled with the fact that the procedural events he engaged in heralded preparation for a forthcoming trial, bespeak a conscious waiver of any rights of dismissal of the information because of untimely arraignment. This conclusion should not be construed as indicative that the same considerations are applicable regarding waiver of the 180 day rule, next to be discussed. The main force of Section 545.780, particularly in view of the provisions for excludable delays which are tied to events customarily arising after arraignment, is directed primarily toward the 180 day provision now to be considered.

■ B. *The 180 day requirement.* The arraignment in this case took place January 2, 1980, but the trial did not commence until October 22, 1980, a lapse of 294 days. This bare showing carries the defendant's initial burden of proving that he has been denied a speedy trial. *State v. Richmond,* 611 S.W.2d 351 (Mo.App.1981); *State v. Franco,* 625 S.W.2d 596 (Mo.1982).

■ At this point, under the foregoing authorities, the burden was cast upon the state to show "excluded time" sufficient to reduce the time lapse to the 180 days permitted. The state admits that obligation and attempts to fulfill the task by showing that certain exclusions should be made under the provisions of Section 545.780–3. The first such exclusion has to do with delay resulting from a change of venue sought and obtained by defendant. The state says that this period should be 21 days, running from March 31 when the parties stipulated to the change of venue until April 21, when the change was finalized. Defendant concedes that some period of time is excludable for this reason under

the specific direction of Section 545.780–3(1)(d). However, he contends that the excludable period should be only 14 days, with the excludable period not beginning until April 7, the date for which the case had already been set for trial. The state's computation appears to be correct and will be used in the various time computations which follow in this opinion.

A second exclusion requested by the state is the one day of October 20, 1980, which was devoted to pretrial motions. This one day is clearly excludable under the specific provision of Section 545.780–3(1)(c). Adding together the two exclusions thus far mentioned makes a total of 22 days, which when subtracted from the 294 days total elapsed time, brings the lapse to a reduced figure of 272 days.

In order to reduce the lapse still further so as to fall below the permitted 180 days, the state next seeks to exclude 98 days of continuances. The first continuance was a six day period from July 15 to 21, consumed by reason of a stipulation of the parties for a trial setting. The next continuance was for 91 days, July 21 to October 21, resulting from a continuance granted at defendant's request. A third continuance of one day occurred from October 21 to 22, apparently called for by the trial judge.

■ No part of said 98 days of continuances may be properly excluded. With respect to the effect to be given continuances, Section 545.780–3(5)(a) provides for the exclusion of:

"Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant's attorney, or the defendant, or at the request of the prosecuting attorney if the continuance is consented to by the defendant's attorney or the defendant and if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the benefits of a speedy trial. *No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall*

*be excludable under this section unless the court sets forth, in the record of the case, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*" (Emphasis added).

Lamentably, the trial judge in this case did not make any record of reasons for the granting of any of the three continuances in question. Under the unequivocal direction of the statute, the delay entailed by those continuances cannot be treated as excludable.

■ Thus the nonexcludable delay amounts to 272 days, which far exceeds the permitted 180 day maximum delay. Nevertheless, the defendant is not entitled to a dismissal of the proceeding unless he undertakes and carries the burden of showing that the failure to meet the time limit was "occasioned" by the state.[2] Section 545.-780–5 provides in this respect:

"If a defendant is not brought to arraignment or trial within the time limit required by this section, the trial judge may dismiss the information or indictment upon motion by the defendant and a showing by defendant that the failure to have the trial commence within time limits specified herein was occasioned by the state."

What is meant by the unusual term "occasioned" has been discussed by this court in *State v. Richmond, supra* 611 S.W.2d at 357, as follows:

"What was in the legislative mind when it used the unfamiliar statutory word 'occasioned', instead of the obvious legal word 'caused'? Obviously the legislature intended something less than

'caused'.... A delay may be 'occasioned' by the state by mere neglect, by failure actively to move the case forward, by simple inertia, when the delay could not be said to have been 'caused' thereby...."

The state argues that it did not "occasion" the delays incident to the three continuances and that if the period consumed by those continuances is subtracted, then the total lapse is reduced to 174 days, well within the 180 day statutory permission. Anamalous though it might appear, the reasons for the continuances must be considered at this point even though, as already stated, these same continuances cannot be considered as excluded time because of the failure of the trial court to make appropriate findings of fact. The difference in treatment for these two different purposes was clearly spelled out in *State v. Franco, supra.*

In *Franco,* continuances were granted at request of the defendant, which had the effect of making the trial more than 180 days after the arraignment. No findings were made by the trial court as to the reasons, as required by Section 545.780–3(5)(a). Nevertheless the court held that the period of delay, while not excludable, was not occasioned by the state, and the court therefore affirmed the action of the trial court in overruling the defendant's motion to dismiss under the speedy trial law. In this respect the *Franco* opinion holds:

"In none of the continuances at the request of the defendant did the trial court make the finding required by Section 545.780 3.(5)(a) in order to make the delay therefrom excusable. However, if the

**2.** It is suggested by some, although not argued in this case nor specifically dealt with by any Missouri case, that in the Speedy Trial context the "state" (in the phrase "occasioned by the state") is not the prosecuting attorney alone but includes also the court. *Cf. State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590, 592 (Mo.App.1980); *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53, 58–59 (Mo.App. 1980). Federal decisions under the Federal Speedy Trial Act, 18 U.S.C.A. Sections 3161–3174 (West Supp. 1982) and Fed.R.Crim.P.

50(b) emphasize the joint responsibility of prosecutor and court to advance criminal cases by affirmative action. The court may not leave the expedition of criminal trials to the initiative of prosecuting attorneys. See *United States v. Didier,* 542 F.2d 1182, 1187 (2d Cir.1976); *United States v. Roemer,* 514 F.2d 1377, 1382 (2d Cir.1975); *United States v. Drummond,* 511 F.2d 1049, 1054 (2d Cir.), cert. denied, 423 U.S. 844, 96 S.Ct. 81, 46 L.Ed.2d 65 (1975); *United States v. Rodriguez,* 497 F.2d 172, 175–76 (5th Cir.1974).

defendant was to receive relief under Section 545.780 5., he had the burden of showing not only the passage of more than 180 days but the further burden of showing that the failure to bring him to trial within that time was 'occasioned' by the state. *State v. Newberry,* 605 S.W.2d 117, 123–124[9] (Mo.1980)."

Just as in *Franco,* so also here the state did not occasion the delays from the three continuances. Concerning the six day delay arising from the stipulation for a trial setting, the state should not be penalized because of a reasonable and commendable effort by the prosecuting attorney to cooperate with defense counsel in fixing a mutually agreeable date. With even more reason, the state should not be charged with the 91 days of delay which resulted from defendant's own request for a continuance. His motion for this continuance shows that it was for his purposes of locating a missing witness and in order to obtain expert testimony.

Defendant was an active participant in securing the first continuance and the sole participant in securing the second continuance. Both continuances inured to the benefit of defendant and it would stretch credulity to say that the 97 day delay incurred thereby was "occasioned by the state" because absent defendant's participation, the delay would not have occurred. As held in *State v. Harris,* Missouri Court of Appeals, Eastern District, No. 44457, decided July 6, 1982, where lengthy continuances were granted "for the parties" and the trial court neglected to make the findings contemplated by Section 545.780–3(5)(a): "[D]efendant benefited, or at least acquiesced, in the granting of the continuances. A dismissal immediately prior to the time set for trial, when both parties are finally prepared, would have a negative impact on the administration of justice resulting in still further delays for the defendant and the public. For these reasons, the trial court did not err in refusing to dismiss the case for a technical violation of the speedy trial act."

Defendant's first point is overruled.

## II.

■ Prior to the commencement of trial defendant filed a request purportedly pursuant to Section 557.036.2 for the court to assess the punishment in the event that the jury should return a verdict of guilty. That request was denied, and that ruling is the subject of defendant's second assignment of error on this appeal.

The basis for the court's ruling was the third paragraph of the Notes on Use under MAI–CR2d 2.64. That instruction covers the situation where the defendant has requested the court to assess punishment, and the instruction advises the jury that if the jury finds the defendant guilty then "the court, and not the jury, will assess the punishment. . . ." Note 3 thereunder states that the instruction must be given "only in jury cases *other than homicide* where the defendant has requested in writing that the court assess the punishment . . . ." (Emphasis added).

Defendant points out that paragraph two of the Notes on Use under this instruction refers to the Supplemental Notes on Use under MAI–CR 17.00, and he argues that Note 3 under 2.64 conflicts with the Notes under 17.00. The Notes under MAI–CR2d 17.00 provide in pertinent part that certain of the approved instructions are to be applied to non-code offenses, in which category the homicide laws fall. These Notes include the following statement: "[T]he following code provisions will apply to non-code offenses: a. The sentencing provisions dealing with the role of the jury in sentencing. The code forms of instructions as to the jury's assessing and declaring the term of imprisonment will apply."

The only case which has been found touching upon the apparent conflict between these Notes on Use is *State ex rel. Eggers v. Enright,* 609 S.W.2d 381 (Mo.banc 1981). The majority opinion in that case holds that a defendant in a capital murder case may not elect to waive assessment of punishment by a jury. However, that case dealt with capital murder which has its own very special and unique provisions relating to imposition of sentence. That decision therefore cannot control the present case.

It is unnecessary for this court to pioneer into this unsettled question. In this case, at the time of the hearing on the motion for new trial, the trial judge stated on the record considerable doubt as to the correctness of his ruling concerning submitting the matter of sentencing to the jury. The judge then went further and stated that if he were to do the sentencing instead of the jury, then the result would be an assessment of punishment at one year in jail as compared to the six months assessed by the jury. Accordingly, if the trial court erred in submitting sentencing to the jury, it was an error in defendant's favor, not against him. Any error in this regard must therefore be declared harmless. Defendant's second point is therefore overruled.

### III.

For his third point, defendant complains that he was not permitted to introduce into evidence the testimony given by witness McNemee at the preliminary hearing. McNemee was a truck driver upon whom defendant's counsel sought to serve a subpoena five days before the commencement of trial. That subpoena was returned by the Sheriff's office on October 21, 1980, non est. On October 23, 1980, defendant's counsel secured a second subpoena issued to McNemee which was again returned by the Sheriff's office marked non est "out of town until 10–25–80."

■■ The prior testimony of a witness may be used at the trial only if the party offering such testimony has exercised reasonable diligence to obtain the presence of the witness in court. *State v. Gray,* 616 S.W.2d 102 (Mo.App.1981) and cases there cited. The trial court here found that by the delay in applying for a subpoena for witness McNemee, the defense had failed to exercise reasonable diligence. In this connection it should be noted that on July 21, 1980, this case had been continued to the specific trial date of October 21, 1980. Notwithstanding this long period of time during which defendant knew that the case was set for trial and also with the knowledge that McNemee was an over the road

truck driver, he waited to get a subpoena until five days before trial. Delay of similar character has been held to show a lack of reasonable diligence. *State v. Deyo,* 358 S.W.2d 816 (Mo.1962). Defendant's third point is therefore overruled.

### IV.

Defendant complains next that the trial court failed to give sua sponte MAI–CR2d 2.40. Defendant made no request for this instruction and he made no objection to it not being given until his motion for new trial. Then he included a point as follows: "7. Because the Court erred in refusing to give Instruction MAI–CR 2.40, although the same was an instruction required to be given whether requested or not; and the same was supported by the evidence."

■ The rules require that points in a motion for new trial be specific. Rule 29.-11. The point just quoted does not meet the requisite standard. *State v. Sanders,* 541 S.W.2d 530 (Mo.banc 1976); *State v. Beavers,* 553 S.W.2d 547 (Mo.App.1977); *State v. Smith,* 598 S.W.2d 118 (Mo.1980).

■ We have reviewed this point to see whether plain error was committed and have concluded that there is no plain error or for that matter any error at all. Instruction 2.40, dealing with justifiable emergency measures, "is only available when the defendant's conduct is occasioned by a situation which developed through no fault of the defendant." *State v. Urhahn,* 621 S.W.2d 928 (Mo.App.1981). In *Urhahn,* the court went on to hold that Instruction 2.40 was properly refused in that case because "evidence exists which could lead the jury to determine that the defendant at least contributed to the situation." Evidence was given in the present case that defendant had been drinking and was traveling at an excessive rate of speed. That suffices under the *Urhahn* decision to preclude the 2.40 instruction. Defendant's fourth point is therefore overruled.

### V.

Defendant contends next that the court erred in refusing to give his tendered In-

**194**

struction X and in giving instead Instruction No. 7. Defendant argues that Instruction X should have been granted as a supplement to the 2.40 instruction. This point stands or falls on the strength of his fourth point. Inasmuch as that point has already been overruled, so also the present point must be overruled.

## VI.

Defendant contends next that the court erred in not giving his tendered Instruction Z which would have defined the term "criminal negligence." That term does not appear anywhere in the given instructions. To define a term not otherwise used in the instructions would have been unnecessary, confusing and therefore improper.

Defendant nevertheless argues that the information uses the term "culpable negligence"; that his converse instruction No. 7 used that same term "culpable negligence"; that "culpable negligence" and "criminal negligence" are interchangeable; and that the court therefore should have defined at least the term "culpable negligence." This attenuated argument is not within the Points Relied Upon and is therefore not before this court for decision.

Defendant's sixth point is overruled.

## VII.

Defendant complains next about the certification made by the Associate Circuit Judge following the preliminary hearing in this case. That certification, consisting largely of a printed form, stated: "[T]he Court finds that an offense has been committed as charge [sic], and that there is probable cause to believe that defendant is guilty thereof." Defendant's argument is that "the certification to the circuit court purported to bifurcate the elements of the accusation, and to *predetermine* the committing of an offense, presumably but not found to be a felony, and leaving (on the record) for the jury to determine only whether or not defendant was the guilty party."

Although the certification is worded ineptly, a fair interpretation accords with the requirements of Rule 22.07(c). In any event, the loose wording of the certification was harmless. There is no showing that it ever came to the attention of the jury, and the language of the certification had no binding effect upon the circuit court.

It should also be noted that defendant made no objection in the circuit court concerning this certification until the second day of trial. Any irregularity in the preliminary hearing was thereby waived. *State v. Wood,* 596 S.W.2d 394 (Mo.banc 1980); *Bryant v. State,* 604 S.W.2d 669 (Mo. App.1980); *State v. Warden,* 591 S.W.2d 170 (Mo.App.1980). Defendant's seventh point is overruled.

## VIII.

Defendant argues next that the court erred in making deviations from MAI–CR 1.02 when reading that instruction to the jury. The trial court did make a number of extremely minor deletions and additions in the course of delivering that standard instruction. Virtually all of them are of such innocuous and obviously harmless nature that it would unduly extend this opinion to set all of these matters out in full.

The only variations of any substance whatsoever were the following. The original venire panel was exhausted before a jury could be chosen. Accordingly, eight additional tales were called and the trial judge had to read Instruction 1.02 again for the benefit of those new veniremen. In so doing the judge added the following:

"THE COURT: Ladies and Gentlemen, the case we are here to try is the case of the State of Missouri versus Jeffrey Reed, and the regular jury panel was exhausted, and in order to obtain a panel enough to make up a jury we had to call in some more people, the sheriff had to, and you're the ones the sheriff selected.

\* \* \* \* \* \*

"Of course, we have gone through another list before so you can see we can't make twelve out of eight. We have some other names already."

With respect to this variation from the standard 1.02 instruction, the deviation was well justified. A new venire panel had been brought into court during the middle of the proceedings. These people needed to know what was going on and the trial judge proceeded to tell them. His comments were brief in duration, innocent in content, and present no grounds for reversal.

The only other variation of any consequence occurred on both readings of the 1.02 instruction (that is, the reading to the original panel and also the reading to the additional talesmen). After reading the portion of the instruction having to do with reasonable doubt, the judge inserted the following:

"I'm going to ask you a question about that instruction. I'll ask that in a general form of all of you at one time so we won't have to ask each of you the same question over and over again. If your answer is 'Yes' or if you do not understand the question, raise your hand and get our attention. Otherwise, Mr. Bumgardner, the court reporter, will record you as answering no to that particular question. That will be true of all general questions.

\* \* \* \* \* \*

"If there is anybody who feels they could no [sic] follow that instruction, would you please raise your hand?

"(No response.)

"All right; I take it by your silence each and every one of you are telling me you can follow that instruction and all other instructions of the court." [3]

The safest procedure, of course, is for the trial judge to give Instruction 1.02 exactly as written with no variation whatsoever. However when a variation does occur, the prejudicial effect is to be judicially determined. Rule 28.02(e). Our careful consideration of the instruction as given in the context of the facts then at hand convinces us that no prejudice occurred. Note should be taken in passing that defendant did not

object at any time to any of these variations and his point in his motion for new trial in this respect is lacking in the specificity required by Rule 28.03. In any event, no prejudice was worked against defendant. *See State v. Babbitt,* 639 S.W.2d 196, Missouri Court of Appeals, Eastern District, No. 42403, decided July 6, 1982.

Defendant's eighth point is overruled.

## IX.

As indicated in the section immediately above, the original number of veniremen was exhausted without the selection of a jury. The trial court then, pursuant to Section 494.250(2) ordered the sheriff to bring in eight additional talesmen. Defendant challenges that action on the basis of *Henson v. Wyrick,* 634 F.2d 1080 (8th Cir.1980).

*Henson* presented a completely different situation. In that case additional talesmen were selected by a sheriff's office which had investigated the crime and which had arrested the defendant. The federal court held that the selection of jurors by the same officers who had been responsible for the investigation and arrest violated the defendant's due process.

Such was not the situation here. Defendant had been investigated, arrested and charged in Buchanan County. The case went on change of venue to Clinton County, where he was being tried. It was the sheriff of Clinton County, wholly unconnected with the original investigation and arrest, who made the selection of the eight additional talesmen. On this very distinction, the Federal 8th Circuit reached the conclusion in *Holt v. Wyrick,* 649 F.2d 543 (1981), that there was no violation of due process and that *Henson* was inapplicable. *See also State v. Alexander,* 620 S.W.2d 380 (Mo. banc 1981).

Defendant's ninth point is overruled.

## X.

For his tenth and final point, defendant complains that the trial court erred in his treatment of defense counsel and

---

**3.** The above is taken from the instruction given to the original panel. The repeated instruction to the additional talesmen was substantially the same.

exhibited bias and prejudice against defense counsel which diminished his effectiveness. This charge is subdivided into three parts.

A. Defendant states first that his closing argument was gratuitously interrupted to anticipate what defense counsel might say, and the court then told the jury to disregard it. The portion of closing argument in question was as follows:

"I don't want to dwell too long on all these facts. You are all capable people, experienced in the ways of the world. You have a memory of the facts. You will take the facts back there with you. You are welcome to any exhibits you want as far as I'm concerned. You will have to ask for them, but if you want them—

THE COURT: The rule is, Ladies and Gentlemen, you can ask for them, but it is for the Court to decide in its own mind whether you should have them. It doesn't have anything to do with whether anybody consents or doesn't consent, or which side consents. It's the Court's duty to decide whether or not you should have them, if you should ask for them. You shouldn't take the implication that one side wants you to have them. Mr. Kranitz knows that to be the law.

MR. KRANITZ: Yes, Ladies and Gentlemen, I know that.

THE COURT: So you disregard his remark that he is glad for you to see the exhibits."

As admitted by defendant's counsel at the time of this episode, the court's statement of the law was correct. We see no impropriety in the court's advising the jury in that respect.

B. Defendant next complains that the court forced his counsel to apologize to the jury. The episode in question occurred during the defense examination of a rebuttal witness:

"Q Do you recall whether or not—

A I don't recall her body being covered up until the ambulance came. They covered her up with a sheet.

Q That's your recollection.

MR. MARQUART: Your Honor, I object to that.

THE COURT: The objection is sustained, and the jury is instructed to disregard that remark. Mr. Kranitz, that is highly improper. I want you to apologize to the jury right now; stand up and apologize to the jury for making that remark.

MR. KRANITZ: I am sorry, ladies and gentlemen, for making that remark.

THE COURT: All right."

Defendant now states that the "remark" in question was in truth a question addressed to the witness rather than a comment upon the testimony. The transcript shows that this remark was a statement, not a question. The transcript as filed was certified by the signatures of counsel for both sides, and the transcript in form as filed is binding upon this court.

C. The third charge made by defendant relates to an exchange which occurred upon the hearing of the motion for new trial and sentencing. The following colloquy took place:

"MR. KRANITZ: Does the sentence also include a denial of probation?

THE COURT: There isn't any question of probation. I don't have any final conviction until he decides what he wants to do. If he feels like the Court is in error, he's not guilty at all, he ought to go the rest of the way up with it. But if he is guilty, I will consider probation or parole or things like that when I find out we have got a final sentence, but not until. I'm not going to play games with you, Mr. Kranitz.

MR. KRANITZ: I'm not suggesting you play games with me, your Honor. I will state on the record I object to the Court making that kind of a remark.

THE COURT: You asked if I was denying you parole.

MR. KRANITZ: I asked if the sentence included probation.

THE COURT: No, it does not include probation.

MR. KRANITZ: That's the only question I asked.

THE COURT: All right; it does not include probation."

Although defendant makes the point that the pretrial investigation indicated that defendant was "a very appropriate candidate for probation," that was in no way binding upon the court. It is further to be noted that this last exchange did not take place in the presence of a jury.

A trial court has the authority and obligation to maintain the orderly conduct of the trial. Its rulings with respect to actions of counsel rest largely within a wide discretion accorded to the trial court. *State v. Benson,* 559 S.W.2d 55 (Mo.App.1977); *State v. Barron,* 465 S.W.2d 523 (Mo.1971). Rulings in those respects depend largely upon tones of voice, facial expressions and other similar factors which give context to the trial episodes and the rulings thereon. Those factors are not reflected in the cold record on appeal, and for that reason an appellate court must largely defer to the trial court's better opportunity to appraise the trial situation. Defendant's tenth point is overruled.

There being no error, the judgment is affirmed.

All concur.