STATE of Missouri, Respondent,

v.

Ronald W. BOULWARE, Appellant.

Ronald BOULWARE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 49032, WD 50843.

Missouri Court of Appeals,
Western District.

March 26, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 30, 1996.

Application to Transfer Denied
June 25, 1996.

Rosemary E. Percival, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SMITH, JJ.

SMITH, Judge.

Appellant Ronald Boulware was charged with one count of sodomy pursuant to § 566.060.2, RSMo Supp.1993, and three counts of deviate sexual assault in the first degree pursuant to § 566.070, RSMo Supp. 1993. His first trial ended in a mistrial, but he was convicted on all counts in his second trial. He was sentenced as a prior and persistent sexual offender to 30 years on the sodomy count and 20 years on each count of deviate sexual assault, all counts running concurrently. He filed a timely, verified Rule 29.15 motion which was denied, except that his sentences on the deviate sexual assault counts were determined to be above the legal limit and reduced to 7 years each. This is a consolidated appeal contesting his conviction, sentence, and denial of his Rule 29.15 motion.

## FACTS

Appellant is the stepfather of the alleged victim. During the alleged sexual molestation, they lived in the same house along with the victim's mother. The victim lived with appellant from the age of five to the age of fourteen. The girl testified that appellant began touching .her vagina and breasts through her clothing when she was seven or eight years old. She testified that these occurrences escalated in severity until they were sleeping together naked throughout the night when she was thirteen or fourteen years old. During these nights, the girl testified appellant placed his hand on her vagina, forced her to place her hand on his penis, and placed his penis on her anus.

After the last alleged incident of abuse, the girl went on a two-week vacation with appellant's uncle, Edward Cronk, and his wife and son. While on vacation, the girl told Mrs. Cronk that she was being sexually molested by appellant. The girl's mother was notified and it was agreed that the girl would go to live with the Cronks for a period of time. Defense counsel made an offer of proof prior to trial saying that he had evidence that after returning home to live with her mother and stepfather, the victim accused both Mr. Cronk and his son of sexually molesting her. Counsel further offered to show that the police investigated these allegations, but no charges were brought. Prior to trial, the trial court sustained the State's motion in limine to exclude evidence of these other charges of sexual molestation made by the victim.

### I.

In Point I, appellant alleges the trial court erred in sustaining the State's motion in limine excluding evidence that the victim had accused two other people of sexual misconduct. Defense counsel intended to present this evidence to the jury to show that the victim had a propensity to accuse others of sexual misconduct.

The trial court's ruling on the motion in limine is interlocutory and subject to change during the course of the trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). Defense counsel made an offer of

proof before trial because the excluded evidence provided his theory of defense and he wanted to mention the evidence in his opening statement. The motion in limine preserves nothing for review. *Id.* Here, appellant, as proponent of the evidence, had a duty to make an attempt *at trial* to present the excluded evidence. *Id.* (emphasis added). Since the trial court's ruling was interlocutory and could have been reversed when Mr. or Mrs. Cronk took the stand and attempted to testify to the sexual abuse charges lodged against Mr. Cronk and his son by the victim, appellant's pre-trial offer of proof did not preserve the issue for appeal. Appellant never gave the trial court the opportunity to reverse its ruling at trial once the proffered evidence was put in the context of the entire trial. We find that appellant's failure to proffer the excluded evidence during the course of the trial results in the issue not being preserved for appeal. *Id.* Point denied.

## II.

Appellant's Point II asserts that the trial court erred in allowing evidence of uncharged crimes to come in through testimony of other acts of sexual molestation against this victim, of appellant's parole status, and through the State's closing argument about the other instances of sexual abuse against this victim. Appellant claims these errors violated his right to due process and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 & 18(a) of the Missouri Constitution. This evidence was not objected to at trial and appellant admits that the issue is therefore not preserved for appeal. However, appellant requests that we review this claim for "plain errors affecting substantial rights" resulting in "manifest injustice or miscarriage of justice" and rule that the trial court should have ordered a mistrial *sua sponte.* Rule 30.20. We will review each of these alleged errors separately.

1. The evidence objected to under this point regarding uncharged acts of sexual molestation against this victim when she was less than fourteen years of age would have been admissible

## A. *Prior Sexual Molestation* [1]

Appellant's first claim is that the State's witnesses testified that appellant sexually abused the girl on occasions other than the four acts with which appellant was charged. The State's evidence showed that the charged abuse occurred over two different time periods. Instead of charging appellant with each occurrence of which there were allegedly many, appellant was charged with four different acts constituting different crimes occurring within these time periods. While on the stand, the girl testified that she was subjected to numerous nights of being forced to sleep with the appellant without any clothes on while he sexually abused her.

Appellant mistakenly attempts to take refuge in *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993). *Bernard* laid the parameters for when uncharged sexual conduct between the defendant and different victims is admissible. The parameters of *Bernard* are inapplicable in this case because we are dealing with the same victim. *State v. Richardson,* 918 S.W.2d 816 (Mo.App.1996); *State v. Dudley,* 880 S.W.2d 580, 582–83 (Mo.App. 1994). Evidence of uncharged sexual conduct with the same victim is admissible to establish motive, intent, absence of mistake or accident, or a common scheme or plan. *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The evidence can also be used to present a complete and coherent picture of the events that transpired. *Id.*

Here, the evidence of the defendant's sexual misconduct toward the victim was admissible to establish intent, motive, and to present a complete and coherent picture of the events that transpired. The need to show the entire progression of events to counter appellant's arguments that the victim fabricated the charges to remove the appellant from the household outweighs the possible prejudicial effect of the evidence. We also note that appellant elicited evidence of

pursuant to § 566.025, RSMo 1994, had this trial occurred after January 1, 1995, the effective date of this statute.

uncharged acts of sexual misconduct towards this victim on cross-examination. Appellant has failed to demonstrate to us that his rights were violated to the extent that manifest injustice or a miscarriage of justice would result from letting the alleged errors stand. *State v. Parker*, 886 S.W.2d 908, 917 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). Point denied.

## B. *Parole Status*

Appellant's second claim of plain error under this point is the statement by the victim's mother referring to appellant's parole status. The actual statement occurred during direct examination as follows:

Q. (By Ms. Smith) So in May of 1990, once again, who was living at the house?

A. Sarah, my daughter, and I.

Q. Did that ever change?

A. Yes.

Q. What happened?

A. At the end of June of 1990 he had moved back in with the approval of Bruce Liese and his parole officer.

Q. Okay. When he moved back in, where was Sarah sleeping?

The trial judge had previously told counsel for both sides that they could not get into appellant's parole status.

■ Appellant argues that this passing reference of a parole officer indicated to the jury that appellant had a prior conviction. Appellant relies on the case of *State v. Brown*, 670 S.W.2d 140 (Mo.App.1984) where the appellate court held the trial court erred in admitting evidence that the defendant was on parole. We do not find this case persuasive. In *Brown*, the judge overruled a motion to exclude mention of a parole by the arresting officer who wanted to quote the defendant as stating he was on parole. *Id.* at 141. The State then reemphasized the defendant's parole status several times during closing argument. *Id.* That is not the case here.

We find the case of *State v. Price*, 787 S.W.2d 296 (Mo.App.1990) more relevant to this case. In *Price*, a witness made a pass-

ing remark about the defendant's parole officer. *Id.* at 302. Defense counsel requested a mistrial but the trial court overruled the motion. *Id.* In reviewing these events, this court stated that where "remarks were vague, indefinite, and did not make reference to a specific crime," the reference to "uncharged offenses lack sufficient prejudice to warrant a mistrial." *Id.* Here, the remark was similarly vague, indefinite, and did not make reference to a specific crime. We therefore find that the trial court did not plainly err by not ordering a mistrial *sua sponte*.

## C. *Closing Argument as to Uncharged Crimes*

■ Appellant's third allegation of plain error under this point is that the State improperly urged the jury to convict appellant based upon prior acts of abuse and his propensity for sodomy rather than the evidence before them. In reality, though, the State told the jury in closing argument that they could not convict appellant because of uncharged crimes but asked them to find appellant admits to child molestation and that he was attracted to the victim. As we stated above, the state was simply arguing from the evidence that the jury could find motive and intent from the facts presented to them. We do not find manifest injustice or a miscarriage of justice. Point denied.

## III.

■ In Point III, appellant asserts that the trial court erred in interrupting defense counsel's cross-examination of the victim on numerous occasions and in making comments while the attorneys were at the bench which were heard by the jury and detrimental to the defense. Appellant claims that these errors denied him his right to a fair trial and to due process of law found in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 & 18(a) of the Missouri Constitution. Trial counsel failed to object to either alleged error and thus they are not preserved for appeal. *Wolfe v. State ex rel. Missouri Highway & Transp. Comm'n*, 910 S.W.2d 294, 297 (Mo.App.1995). He therefore asks

this court to find plain error affecting substantial rights resulting in manifest injustice and a miscarriage of justice under Rule 30.20.

◼ Appellant begins by arguing that because his attorney was in a wheelchair at trial and had difficulty hearing, the judge was forced to project his voice more than usual when attorneys are at the bench and the jury was therefore likely able to hear the comments made by the judge. An appellate court cannot find plain error occurred at the trial level based on an assertion that it was "likely" that the jury heard the judge's comments. The plain error rule is to be used sparingly and there must be "a strong clear showing that injustice or a miscarriage of justice resulted." *State v. Koonce*, 731 S.W.2d 431, 442 (Mo.App.1987). Appellant has not made such a showing here.

◼ Appellant also cites to fourteen interruptions by the trial court during the cross-examination of the victim to show that the judge conveyed a message of partiality to the jury. The standard of review on the issue of whether the trial judge acted improperly is:

> [W]hether the trial court's conduct is such as to prejudice the minds of the jury against defendant thereby depriving defendant of a fair and impartial trial. Whether there was prejudice depends on the context and words in each case. The trial court must maintain a position of absolute impartiality, avoid any conduct which might be construed as indicating a belief on the part of the judge as to the guilt of defendant and the court should not demonstrate hostility toward the defendant.

*State v. Puckett*, 611 S.W.2d 242, 244 (Mo. App.1980) (citations omitted). However, the trial court does have a duty to maintain an orderly trial. *State v. Reed*, 640 S.W.2d 188, 197 (Mo.App.1982). The trial court's interference with counsel's examination of a witness "rest[s] largely within a wide discretion accorded to the trial court." *Id.*

◼ We have reviewed each of the fourteen interruptions by the trial court and find no plain error. By appellant's own admission, the trial court was acting to prevent repetitive questioning and to keep defense counsel from asking questions without permitting the witness to answer those questions. Appellant also focuses on one instance during the cross-examination of the victim's mother where the trial court stopped a line of questioning. After reviewing the transcript, we find the trial court was actually acting to warn defense counsel that he would be opening up the issue of the appellant's parole status if he finished his question and to make sure that he was aware of the ramifications of his actions. We cannot find that the trial judge was partial toward the State when the court was protecting the rights of the defendant. Point denied.

## IV.

◼ Point IV alleges that the motion court erred in denying appellant's Rule 29.15 motion for post-conviction relief based on ineffective assistance of trial counsel for failing to object to the interruptions by the trial court and the comments of the trial court made within the hearing of the jury which we discussed above in Point III. We must determine whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(k). We will find the motion court to have been clearly erroneous only if we are left with a definite and firm impression that a mistake has been made after reviewing the record as a whole. *State v. Schaal*, 806 S.W.2d 659, 667 (Mo. banc 1991), *cert. denied*, 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992).

◼ Appellant had the burden at the motion court of establishing by a preponderance of the evidence that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances and that he was prejudiced by this failure. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 693 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Trial counsel's performance must have been outcome determinative for prejudice to exist. *Harris*, 870 S.W.2d at 814. If the alleged error can be attributed to reasonable trial strategy, we will not find a failure to exercise the custom-

ary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances. *Id.*

On the issue that the jury heard the comments by the judge made to the attorneys at the bench, the motion court (same judge as at trial) made a specific finding that the jury did not hear the comments by the judge. The motion court held that the failure to make meritless objections does not show the ineffectiveness of counsel and furthermore, the failure to make an objection with merit must be attributed to trial strategy. *State v. Leisure*, 838 S.W.2d 49, 54 (Mo.App.1992).

After reviewing the entire record, we are not left with the definite impression of error. As stated above, we cannot find clear error based on the appellant's suggestion that it is "likely" that the jury heard the judge's comments made to the attorneys at the bench. A mere likelihood does not leave us with a firm impression of error. Nor can we find the motion court clearly erred in not finding appellant's counsel ineffective at trial for failing to object to the judge's repeated interruptions. Appellant has failed to leave us with a firm and definite impression that his counsel should have objected, or that if an objection should have been made, he was prejudiced thereby. We cannot find on these facts that the prejudice, if any, was outcome determinative and not attributable to reasonable trial strategy. We find no clear error in the motion court's conclusion that appellant did not meet this burden.

## V.

Appellant's final point urges us to find the motion court erred in denying appellant's motion for change of judge at the Rule 29.15 proceeding and that this error denied appellant his right to due process of law under the United States and Missouri Constitutions.

Appellant filed a Rule 51.05 motion requesting an automatic change of judge. The Missouri Supreme Court, however, has held that the right to an automatic change of judge under Rule 51.05 does not apply in the post-conviction context. *Thomas v. State*,

808 S.W.2d 364, 366–67 (Mo. banc 1991). However, the Court also held that "[d]ue process concerns permit any litigant to remove a biased judge." *Id.* at 367.

Appellant claims that the trial judge expressed his bias against him by repeatedly interrupting defense counsel during cross-examination and in making comments detrimental to the defense within the hearing of the jury. Except for one comment made by the judge, we find nothing in the record or in appellant's argument which merits discussion on this point. However, one comment could be sufficient to indicate bias and we will therefore undertake a more detailed determination of whether evidence of bias exists.

The comment which causes us concern occurred during the direct examination of the victim. The girl began to cry and defense counsel asked to approach the bench. When at the bench, the following exchange took place:

DEFENSE COUNSEL: Judge, I'm going to ask for a recess. She's crying again like she did at the first trial.

THE COURT: That's all right. I don't blame her. Overruled.

Appellant cites to this comment by the trial judge as an example of his bias against the appellant.

"Our review must be based upon the objective facts of the record as we read it, from the standpoint of a reasonable and disinterested bystander, unacquainted with the personality, the integrity and the dedication of the judge." *State v. Lovelady*, 691 S.W.2d 364, 367 (Mo.App.1985). However, "[a] disqualifying bias and prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *State v. Hunter*, 840 S.W.2d 850, 866 (Mo. banc 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). We do not find such a bias here. There is a presumption that a trial judge is impartial and has discretion to weigh his own bias. *State v. Cooper*, 811 S.W.2d 786, 791 (Mo.App.1991). Appellant must demonstrate an abuse of that discretion to overcome this presumption. *Id.*

We do not mean by this opinion to encourage such remarks. Such remarks, whether indicative of true bias or not, can leave the impression that the judge is not making decisions based solely on the law. In this case, though, appellant's interpretation is not the only construction possible. The judge's statement was one of compassion and not necessarily indicative of his belief as to the appellant's guilt or the truth of the witness's testimony. One of appellant's defenses was that the girl was confused as to whether her natural father or her stepfather abused her. Explaining how she was sexually abused, whether by the appellant or someone else, and even whether true or not, under the pressure of cross-examination can be a trying experience which could explain why the witness was driven to tears. While we do not encourage such comments, this single instance does not rise to the level of disqualifying bias. Point denied.

### CONCLUSION

We affirm the judgment of convictions and sentences of appellant and the order denying his Rule 29.15 motion.

All Concur.