STATE of Missouri,
Plaintiff-Respondent,

v.

Frederick D. SHERRARD,
Defendant-Appellant.

No. 46151.

Missouri Court of Appeals,
Eastern District, Division Five.

Oct. 11, 1983.

 

Doris G. Black, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

JAMES A. FINCH, Senior Judge.

Defendant Sherrard was convicted on two counts of rape, two counts of sodomy, one count of kidnapping and one count of second degree assault. He was acquitted on a charge of robbery. He received sentences of five years on each count except the assault on which the sentence was two years. Sentences for the kidnapping, for one rape and for one sodomy were to be served consecutively. The other sentences were to be served concurrently with the three consecutive sentences.

On appeal, Sherrard asserts (I) error in overruling his pretrial motion to suppress identification of him on the basis of unduly suggestive police procedures; (II) error in overruling his motion to suppress his statements and confessions on the basis that he was not properly advised of his rights and he was coerced by threats of serious bodily harm; (III) error in overruling his motion for acquittal because a submissible case on the charges of rape and sodomy was not made; and (IV) error in denying his motion to dismiss Counts VI and VII (rape and sodomy) as duplicitous of Counts III and IV, as well as error in giving instructions on Counts VI and VII. We affirm.

On the night of August 2, 1981, the victim stopped her automobile at a stop light. A man, later identified as Michael Garrett, came to the driver's side of the car and, exhibiting a pistol, required her to move over. Then Garrett entered the car and drove it behind an adjacent Texaco filling station. At that time another man, later identified as Frederick Sherrard, approached the right side of the car and got in the front seat with the victim and Garrett.

Subsequently each man required the victim to commit an act of oral sodomy and each then raped her. She was told to get out of the car but while she and Sherrard

were still on the back seat, the gun in Garrett's hand was fired, first striking Sherrard in the thigh and then hitting her in the stomach. She was dumped on the ground and the two men drove off in her car. She then crawled to a neighboring house and aroused the occupants. The police and an ambulance were called and she was taken to a hospital.

That same night Sherrard was admitted to another hospital with a gunshot in his right thigh. The police were called and he told them that he was standing on a street corner (not far from where she was shot) and that, while he was urinating, a van drove by and an occupant shot him in the hip.

Other facts shown by the evidence are recited in connection with our discussion of defendant's assignments on appeal.

## I

■ Sherrard's first assignment on appeal is that the trial court erred in overruling his pretrial motion to suppress any in-court identification of him for the reason that such identifications would be based on an unduly suggestive pretrial confrontation conducive to irreparable mistaken identification. The confrontation of which defendant complains occurred between the victim and defendant in Detective Brogan's office on September 11, 1981.

We conclude that the trial court's action on this motion to suppress was justified. It's action is supported by evidence from which it could be found that:

1. On the night of August 2, 1981, the victim had ample opportunity to observe both defendant and his companion Michael Garrett. After Garrett entered the car and drove it behind the filling station, defendant got in the front seat beside her. Then, at Garrett's direction, he took the gun and walked to the front of the adjacent Texaco filling station. He later returned and got in the back seat with her. He remained there while Garrett drove the car to another street at which point defendant made her perform an act of oral sodomy, after which he got on top of her and raped her. He

remained on the back seat while he pulled up his pants and was there when the gun in Garrett's hand discharged and struck defendant and the victim. She could observe him as he got out of the car and was shouting that Garrett had shot him. This considerable span of time gave ample opportunity for her to have an independent basis for recognizing defendant.

2. On the following day at the hospital she was asked if she could go see a lineup. She had been operated on earlier and was still sedated and said she could not go to the lineup. Later that day she was shown a picture of a lineup of four men and asked if she recognized any of them. While she did not make a positive identification from the photograph, she pointed to the man who was second from the left and said she thought he was the man. The man she pointed to was the defendant.

3. When she came to the police station on September 11, she did not know that defendant would be there. She was not told that the police had a suspect whom she was to view. Defendant's brief suggests that she was so told but the testimony is to the contrary. She was told only that the officers wanted to talk to her about what had happened to her.

4. When she walked into Detective Brogan's office she saw defendant and immediately recognized him as one of the men who attacked her on the night of August 2.

5. Prior to her visit to the police station, Sherrard had admitted to the officers that he and Garrett were the two men who abducted and then raped and sodomized the victim on the night of August 2. He had done this after receiving *Miranda* warnings. Furthermore, he had told the officers that he had no objection to the victim coming to the station and being present. It was after that statement that Officer Brogan called her to come to the station.

6. After she came to the station, defendant, after an additional *Miranda* warning, again confessed to what he and Garrett had done on the night of August 2 and stated that he had received the gunshot in his

thigh at that time when Garrett shot both him and her.

We conclude that under the evidence the in-court identification of defendant by the victim had an origin and basis independent of the confrontation which occurred at the police station on September 11 and that the likelihood of misidentification as a result of the occurrences at the police station on September 11 has not been shown. The foregoing evidence supports the Court's action in overruling the motion to suppress in-court identification.

In connection with this assignment, defendant cites and relies on *State v. DeGraffenried*, 477 S.W.2d 57 (Mo. banc 1972). There the court held that under the facts of that case it was reversible error to admit the testimony of an officer that he had heard and observed the identifying witness' extra-judicial identification of an accused from a photograph and in a subsequent lineup. That is not the issue raised in this case. We do not have an issue as to admissibility of the police officers' testimony. Rather, the issue raised on appeal is whether the court should have suppressed the in-court identification by the victim. *DeGraffenried* does not support a reversal of this case.

We overrule defendant's first assignment.

## II

Sherrard's second point relied on in this appeal is that the trial court erred in overruling his motion to suppress statements and confessions which he made. In this assignment defendant recites that (1) the statements were made without defendant having been advised promptly of his *Miranda* rights and (2) the statements were coerced by threats of serious bodily harm.

■ Sherrard testified in support of his motion to suppress that he was given no *Miranda* warnings. However, in the course of the direct examination by his counsel, defendant testified as follows:

"Q. Did they advise you prior to questioning that you were a suspect in the Cruthis incident?

"A. Yes, Ma'am.

"Q. When did they first advise you of that?

"A. After they got me down to the 6th district.

"Q. Okay. When was the first time any officer advised you that you were a suspect in the Cruthis incident?

"A. After they got me down to the 6th district.

"Q. Had any questions been asked of you about that incident?

"A. In the 6th district?

"Q. Yes. Prior, before you were told that you had a right to remain silent. Had any question already been asked to you?

"A. No."

The foregoing suggests that defendant was told of his right to remain silent.

Detective Brogan testified positively that before he asked defendant any questions about the Cruthis affair he gave him *Miranda* warnings. Other officers who were present also so testified. In addition, Brogan testified that after the victim and Michael Crets arrived he repeated *Miranda* warnings to defendant and this was confirmed by the testimony of her and her boy friend, Michael Crets.

In overruling defendant's motion to quash, the trial court believed the testimony that warnings had been given. The evidence was sufficient to support that action.

■ On the question of coercion, defendant testified that Detective Brogan threatened to beat him and said he would kill defendant if he didn't cooperate. He said that no one struck him but that when Crets was present, he was hitting one fist into his other hand.

The officers and witnesses all testified that no threats were made and that Crets did not engage in threatening actions.

Again, in overruling defendant's motion to suppress, the trial court believed the officers and witnesses rather than defendant's testimony that he had been threat-

ened. The evidence was sufficient to support that action.

■ Although not stated in his points relied upon or in his motion for new trial, defendant asserts in his written argument that his statements followed an illegal warrantless arrest and are inadmissible for this reason as well.

In arguing the illegal warrantless arrest contention, defendant relies primarily on *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and *State v. Brockman,* 634 S.W.2d 575 (Mo.App.1982). In both of those cases the defendant clearly was arrested. In *Brown,* the officers pointed guns at defendant and told him he was under arrest. The United States Supreme Court held that such arrest was without probable cause and that under the facts of that case his subsequent statements were inadmissible. In *Brockman,* the police arrested defendant but the court concluded that there was probable cause for such arrest. Since the arrest was not unlawful, defendant was not entitled to have his statement suppressed.

In the present case the evidence does not show that defendant was arrested when the officers came to his home on September 11. The defendant did not testify that the officers arrested him or that they forced him to accompany them. Instead, he said they asked about the shooting he had reported and that he went voluntarily to the 6th district station. The officers testified that they told defendant that they wanted to talk to him about the shooting he had reported and asked if he would accompany them to the police station, to which he agreed.

Upon such record we conclude that *Brown v. Illinois* is inapplicable.

We overrule defendant's second assignment.

### III

■ Defendant's third assignment is that the trial court erred in overruling his motion for judgment of acquittal for the reason that the state failed to make a submissible case on the charges of rape and sodomy.

We overrule this contention. The witness testified positively that defendant raped her and forced her to commit an act of oral sodomy. Defendant confessed to the commission of these offenses, admitting that he required her to commit oral sodomy and that he then had intercourse with her. His statements and confessions were admitted in evidence. There also was evidence of the presence of acid phosphatose, indicating semen, in her vagina. The evidence most favorable to the state clearly was sufficient to support the verdict.

### IV

Finally, defendant complains that he was subjected to multiple verdicts and punishments for rape and sodomy.

Counts III and VII charged defendant with sodomy. As to Count III the jury was instructed by Instruction No. 14, that if it found that defendant had deviate sexual intercourse (defined as a sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person) with the victim it should find him guilty of sodomy under Count III. As to Count VII the jury was instructed by Instruction No. 24 that if it found that Michael Garrett had deviate sexual intercourse with the victim and that defendant acted with and aided Michael Garrett in committing that offense, it should convict defendant of sodomy under Count VII.

Counts IV and VI charged defendant with the forcible rape of the victim. As to Count IV the jury was instructed by Instruction No. 16 that if it found that defendant had forcible sexual intercourse with the victim without her consent, it should find defendant guilty of rape under Count IV. As to Count VI the jury was instructed by Instruction No. 23 that if it found that Michael Garrett had forcible sexual intercourse with the victim without her consent and that defendant acted with and aided Michael Garrett in committing that offense, it should convict defendant of rape under Count VI.

Defendant argues first that the two convictions for rape and two convictions for sodomy violated the provisions against being tried twice for the same offense which are contained in the Fifth Amendment to the Constitution of the United States and in Article I, § 19 of the Missouri Constitution. He also argues that these multiple convictions violate the provisions of § 556.041(4), RSMo 1978 which states that a defendant may not be convicted of more than one offense if the offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted.

We reject both of these contentions. Defendant was not tried twice for a single offense of rape or for a single offense of sodomy. By Counts III and IV defendant was charged with and convicted of personally raping the victim and forcing her to commit an action of oral sodomy with this defendant. By Counts VI and VII defendant was charged with and convicted of aiding and abetting Michael Garrett to rape her and force her to commit an act of oral sodomy with Michael Garrett. These were entirely separate offenses. There was no violation of the Fifth Amendment to the United States Constitution or Art. I, § 19 of the Missouri Constitution.

Nor was there a violation of § 556.041(4). The rape and sodomy involving defendant and her occurred at a different location and time from the rape and sodomy involving Michael Garrett and which defendant was charged with aiding and abetting. The statutes do not define the two rapes as a continuing course of conduct which constitutes a single offense. The same can be said with reference to the two acts of sodomy.

We overrule defendant's fourth assignment.

Judgment affirmed.

PUDLOWSKI, P.J., and JOHN E. PARRISH, Special Judge, concur.