STATE of Missouri, Plaintiff-Respondent,

v.

Wallace SPIVEY, Defendant-Appellant.

No. 48000.

Missouri Court of Appeals, Eastern District, Division Four.

March 25, 1986.

Motion for Rehearing and/or Transfer Denied April 29, 1986.

Application to Transfer Denied June 17, 1986.

Dave Hemingway and Kathryn Shubik, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., and Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

Wallace Spivey, a pre-lingually deaf person, appeals from a judgment convicting him of capital murder in violation of Sec. 565.001 RSMo. 1978 (repealed 1983) and Sec. 565.006 RSMo. 1978 (Cum.Supp.1982, repealed 1983). A jury found appellant guilty and imposed a sentence of life imprisonment without probation or parole for fifty years. Appellant correctly argued that inadmissible evidence of past criminal acts prejudiced his trial. The judgment is reversed and the cause remanded for a new trial.

This case comes before this court on retransfer from the Missouri Supreme Court. Earlier it was transferred to the Supreme Court because the first of the five points on appeal challenged the constitutionality of Sec. 494.020.1(2) RSMo. (1978), which makes deaf persons ineligible to serve on juries, an issue over which the Supreme Court has exclusive appellate jurisdiction. Mo. Const. Art. V. Sec. 3. The Supreme Court decided the statute was in fact constitutionally valid and retransferred the case to this court for a ruling on the remaining four points on appeal. *State v. Spivey*, 700 S.W.2d 812, 815[5] (Mo. banc 1985).

This is a companion case to *State v. Randolph*, 698 S.W.2d 535 (Mo.App.1985). Randolph, also a pre-lingually deaf person, was tried and convicted as a co-participant with appellant in the murder of a third deaf person. The judgment convicting Randolph was reversed because of the erroneous admission of evidence of other crimes. *Id.* at 542.

Appellant shared an apartment with Ronnie Randolph in the same apartment com-

plex as the victim, Greg Eisenberg, who was also pre-lingually deaf. Appellant and Randolph attended a party at the victim's apartment. A fight erupted between appellant and the victim after the other guests had gone home. Appellant stated to the police that Randolph told him to kill the victim during the fight so appellant choked him to death with his hands. Appellant and Randolph then took the victim's watch, put the victim in the bathtub and ran hot water into it. Appellant and Randolph then took the victim's knapsacks and a shirt before leaving the victim's apartment.

In appellant's remaining four points he alleges the trial court erred: (1) in finding that appellant was competent to stand trial; (2) in permitting a police officer to testify over a hearsay objection; (3) in denying appellant's motion to suppress statements; and (4) in allowing a witness to testify that appellant and Randolph raped her, and that decedent knew it.

Appellant's challenge to the trial court's ruling that he was competent to stand trial has no merit. A lengthy hearing was held on this issue prior to trial. The trial court concluded after hearing conflicting expert witnesses, that appellant was competent to stand trial. This finding by the trial court will be sustained by this court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). The *Murphy v. Carron* standard of review applies to a court's finding of fact on competency. *State v. Clark*, 546 S.W.2d 455, 469–70[23] (Mo.App.1976).

This court concludes from the transcript of the trial court hearing on competency that the trial court's ruling was supported by substantial evidence, was not against the weight of the evidence and that there was no erroneous declaration or application of the law, nor any abuse of discretion. *See State v. Bradshaw*, 593 S.W.2d 562, 567[9, 10] (Mo.App.1979). *See also State v.*

*Randolph,* cited *supra.* Appellant's point is denied.

In another point appellant challenges the trial court's ruling permitting Officer Griffin to testify concerning appellant's statements to the police through the medium of interpreters. Appellant asserts that because Officer Griffin does not understand sign language, he had no first hand knowledge of appellant's statements, and therefore his testimony was prejudicial hearsay. This point has no merit.

The trial court allowed police Officer Griffin to testify to the contents of appellant's statement as related to him by the sign language interpreter, Alan Atwood. This point was also raised by Randolph in his appeal. In *Randolph, supra,* this court acknowledged that deaf mutes may be witnesses in Missouri. *State v. Howard,* 118 Mo. 127, 24 S.W. 41, 45 (Mo.1893). The court then reasoned that if a deaf person is a party opponent the translator's interpretation of his testimony is admissible as an admission. *United States v. DaSilva,* 725 F.2d 828, 831–32[6] (2d Cir.1983). The hearsay problem is overcome by the exception to the hearsay rule for the admissions of a party opponent. The *Randolph* opinion explores this issue in greater detail. *Randolph,* 698 S.W.2d at 537[5].

■ As pointed out in *Randolph,* the main issue is whether the interpreter was reliable. *See State v. Letterman,* 47 Or. App. 1145, 616 P.2d 505 (1980), *aff'd,* 291 Or. 3, 627 P.2d 484 (1981). In the case under review, the same interpreter was used to assist appellant and Randolph. Officer Griffin testified in both cases. The interpreter, Mr. Atwood, testified that he was required to be neutral and bound by a code of ethics to communicate only what comes from the sender. Appellant did not attack the accuracy of Mr. Atwood's interpretation nor his qualifications to do so. Appellant's point is denied.

Appellant next alleges that the trial court erred in denying his motion to suppress his statements to the police because the statements were made incident to what

appellant claims was an illegal arrest. This point is also denied.

On August 30, Officer Griffin received a telephone call from Dottie Wilcox, a psychotherapist who knew Randolph, Spivey and the victim. Wilcox told the police that she had seen appellant at a restaurant on August 30 wearing the victim's wristwatch, which he claimed he purchased from the victim. She also said she had seen appellant on August 26 with two knapsacks which he claimed he had purchased from the victim. Wilcox knew that the victim himself recently had purchased one of the knapsacks. Wilcox told Officer Griffin that it seemed unusual that the victim would sell appellant his wristwatch because it was a gift from the victim's father. Wilcox also said that the alleged knapsack sale was unusual because the victim told her he bought the knapsack especially for a trip, was excited about the trip and looking forward to it.

Wilcox told Officer Griffin about an incident in which Larry Jackson, also a pre-lingually deaf person, had been at a party with appellant and Randolph at the victim's apartment after which Jackson found himself in a bathtub of water the next morning, with an amount of money missing.

Officer Griffin interviewed Jackson with the assistance of an interpreter. Jackson told Officer Griffin that he had found himself in a bathtub in an apartment on the first floor of the victim's apartment building after a party one evening and that he and the victim suspected appellant and Randolph had been involved. Officer Griffin noted that the victim had also been discovered in a bathtub full of water.

Based on the information from Wilcox and Jackson, Officer Griffin went to appellant's apartment on September 3, 1981 to interview him and his roommate Randolph. Randolph was at the apartment, but appellant was at work. Officer Griffin decided to interview both appellant and Randolph at the same time, so he dispatched two detectives to appellant's place of employment. The two detectives went there, identified themselves to appellant, displayed their homicide division badges and wrote a note saying "[w]ould you come with us, someone wants to talk with you at homicide." Appellant complied with the officers' request and went with them to the police station.

At the police station, Allen Atwood, an interpreter for the hearing impaired, acted as an interpreter during the police interview with appellant. Atwood communicated to appellant his *Miranda* rights.

During the police interview, appellant said that a policeman had shown him a black and white photograph of the victim. The appellant then described in detail what the photograph depicted. None of the police photographs was in black and white, and none of them depicted the details appellant used to describe the picture.

After a lunch break, Randolph was notified that he was under arrest. He became excited and stated that he did not kill the victim, but that appellant had strangled the victim with a rope. Next, appellant was placed under arrest for the murder. Officer Griffin told appellant that Randolph had made a statement telling the police what had happened in the apartment. Appellant then made a statement to the police, describing how he killed the victim.

Appellant asserts that the arrest commenced at the time he "submitted to the officers' showing of authority at his workplace." The state contends that appellant went to the police station voluntarily.

The facts are similar in *State v. Sherrard*, 659 S.W.2d 582 (Mo.App.1983). In *Sherrard*, the defendant claimed on appeal that statements he gave to the police were improperly admitted into evidence because they followed an illegal warrantless arrest. *Id.* at 583. In *Sherrard*, the police officers went to the defendant's home and asked him about a shooting he had reported. The officers asked defendant to accompany them to the police station, to which he agreed. *Id.* at 584. Defendant claimed that these actions constituted an illegal arrest relying on *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)

and *State v. Brockman,* 634 S.W.2d 575 (Mo.App.1982). The court distinguished these two cases by stating that in both the defendant was clearly arrested. *Sherrard,* 659 S.W.2d at 586. The court ruled that the evidence did not show that defendant was arrested when the officers came to his home. *Id.* Similarly, appellant was not arrested when he voluntarily accompanied the detectives to the police station from his place of employment.

Appellant relies on *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 *reh'g denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980) for the U.S. Supreme Court's ruling that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." 446 U.S. at 553, 100 S.Ct. at 1877. In *Mendenhall,* however, the Supreme Court ruled that no seizure had taken place when two federal drug enforcement agency officers stopped defendant and one of them asked her to accompany him to the airport DEA office for further questioning, which she did. *Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1877–78. *Mendenhall* does not aid appellant, however.

■ Appellant's freedom of movement was not restrained. Although it is true that appellant's hearing impairment is a proper factor to be considered in determining whether he was coerced into accompanying the police officers, it is not decisive of the issue. The evidence demonstrates that appellant accompanied the officers voluntarily to the police station and thus no arrest occurred.

■ Appellant further argues that even if he did voluntarily go to the police station he was under arrest as soon as he arrived there because he was placed in a secluded interview room and given his *Miranda* warning. In *Sherrard,* the defendant was given the *Miranda* warnings before questioning began, but the court determined that no arrest had taken place at that time. *Sherrard,* 659 S.W.2d at 585. Here the police acted cautiously by giving the *Miranda* warnings to appellant with the aid

of an interpreter. Appellant knew he had the right to refuse to respond, yet chose to answer the police officers' questions. The fact that *Miranda* warnings were given to appellant before questioning began does not change the voluntary nature of his actions. Therefore, appellant's statements were properly admitted.

■ Even if this court were inclined to find that a warrantless arrest of appellant took place as early as the time the officers went to appellant's work place, such an arrest would be valid because probable cause existed at that time to support the arrest. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh'g denied* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); *See also State v. Busby,* 656 S.W.2d 820, 822 (Mo.App.1983). The police had information from Dottie Wilcox concerning how strange it was that appellant had in his possession the victim's watch and knapsacks. The police also knew that a mutual acquaintance of appellant and the victim, Mr. Jackson, woke up in a bathtub of water after a prior party at the victim's house and that Jackson and the victim suspected appellant was responsible. Information from two unrelated informants implicating appellant created the necessary probable cause to arrest appellant. The point must be ruled against appellant.

In appellant's final point on appeal he challenges the trial court's ruling permitting witnesses to testify that appellant and Randolph had raped a woman, that the victim knew of the incident, talked about it, and was murdered because of his gossiping. The trial court did err in admitting this testimony, the error was prejudicial and the cause must be reversed and remanded to the trial court for a new trial.

The state argues that this testimony was admissible because it established appellant's motive in killing the victim. The state theorized that the witness told the victim that she was raped by appellant and Randolph. The victim then told the social service worker Dottie Wilcox, who knew all three of the young men, that appellant and

Randolph raped the witness. Wilcox then lectured both appellant and Randolph concerning the rape incident. The record indicated that both appellant and Randolph were angry with the victim for gossiping about the rape, especially for his gossiping to the hearing community. According to the state, this anger formed the motive for the murder.

The state's argument has surface appeal. Evidence of a crime other than the crime in issue may be admitted to show motive if motive is in issue and if the evidence is relevant. *State v. Buckles*, 636 S.W.2d 914, 918[2, 3] (Mo. banc 1982); *State v. Randolph*, 698 S.W.2d at 541[9, 10].

This rule, however, is an exception to the general rule which makes evidence of another crime inadmissible because this evidence may result in a conviction based on a crime with which the defendant is not charged and, thus, prejudice the defendant. *See, e.g., State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982).

The tension between relevancy and prejudice must be resolved by the trial court applying "rigid scrutiny," and doubt, if it exists, must be resolved in favor of the defendant. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307[2] (1954).

■ In the present case, admitting evidence of another crime—rape—prejudiced defendant. The witness who testified about being raped did not simply state she told the victim she had been raped by appellant and Randolph. Rather she was permitted to give a detailed description of the rape. This shifted the focus from the victim gossiping about a possible rape to the rape itself. This shift of focus immeasurably increased the risk of the jury convicting appellant of killing the victim because appellant had previously raped someone rather than convicting appellant of killing the victim to stop him from gossiping. The detailed testimony here describing the rape went far beyond that needed to establish the motive claimed by the state. The motive asserted was the gossiping of the victim not the truth of the gossiping. Thus,

utilizing the testimony of the "rape" victim was unnecessary and prejudicial.

The state justifies the use of the alleged rape victim's testimony on the state's need to establish a motive for the murder. The state argued that unless it could produce the motive for the crime, the murder would appear senseless and bizarre to the jury in light of appellant's medical testimony that he was suffering from a mental disease or defect at the time of the crime. Therefore, it was important that the state be allowed to show that appellant had a motive for the killing.

The state's argument fails to take into consideration the effect of this prejudicial testimony on the jury. The prejudice to the appellant in receiving this evidence far outweighed the possible relevancy or probative effect it might have had. Moreover, the evidence would have supported a belief that robbery, not the gossiping, was the motive for the crime, because appellant Randolph took the victim's wristwatch and knapsacks.

The state cited several cases in its brief in support of the admission of the rape testimony. In *State v. Franco*, 625 S.W.2d 596 (Mo.1981), the court admitted evidence of defendant's assault on one victim at the capital murder trial for the killing of another victim. *Id.* at 602. The defendant shot and wounded the first victim one night at a party. The next day, other guests at the party told the police that the defendant was responsible for the shooting. That evening, shots were fired into the homes of people who identified the defendant for the police. One man was killed. *Id.* at 597–98. At the capital murder trial for the killing of the second victim, the court properly admitted evidence of defendant's assault on the first victim "to show motive." *Id.* at 602.

The *Franco* case is distinguishable. The factual connection of the two crimes is much closer, thereby making the relevancy problem less tenuous than in the case under review. In *Franco*, several witnesses informed the police of defendant's activities and these are the same people into whose homes the defendant shot when he killed

the victim. The two crimes were separated by only one day. *Id.* at 597. Both crimes involved a shooting incident. At the capital murder trial, there were several witnesses who could testify with first hand knowledge that defendant perpetrated the first assault. Although prejudicial, this evidence had a probative effect that outweighed the prejudicial effect on the jury.

The testimony of the woman claiming appellant had raped her was inadmissible. The trial court erred in allowing this prejudicial testimony.

The judgment is reversed and the cause remanded.

SMITH, P.J., and SATZ, J., concur.