STATE of Missouri, Respondent,

v.

Jimmy L. HICKS, Appellant.

No. WD 39816.

Missouri Court of Appeals,
Western District.

May 3, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 28, 1988.

Application to Transfer Denied
Sept. 13, 1988.

Jeffrey J. Rosanswank, Public Defender,
Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson
City, Philip M. Koppe, Asst. Atty. Gen.,
Kansas City, for respondent.

Before SHANGLER, P.J., and
LOWENSTEIN and GAITAN, JJ.

PER CURIAM.

A jury convicted appellant of one count of robbery in the first degree [§ 569.020 RSMo 1986] and one count of armed criminal action [§ 571.015 RSMo 1986]. Appellant was sentenced to 30 years imprisonment on each count. He now claims that the trial court erred in denial of his motion to suppress, and in the admission of his oral confession into evidence, on the ground that the confession was the result of an unlawful arrest.

The judgment of the trial court is affirmed.

Shortly before midnight on March 25, 1987, David Williamson, an employee of Nowell's Grocery Store in Columbia, Missouri, was counting money in the store's "courtesy booth" when he noticed someone entering the area leading to the store's safe room Williamson continued to count the receipts and placed $55,000 of the money in a bag and carried the bag to the safe room.

When Williamson entered the room, a man hiding behind the door closed the door behind Williamson and turned the lights on. The robber then pointed a pistol at Williamson's head and ordered him to open the safe. After Williamson was unsuccessful in two attempts at opening the safe, the robber pulled back the hammer on the pistol and told Williamson that if he failed once more, he would blow his brains out.

On the third try, Williamson opened the safe, and placed $30,000 from the safe, as well as $55,000 from the bag, into a white kitchen garbage bag which the robber had handed him. Robber then tied Williamson's hands with tape, and instructed him to crouch under a desk in the room and wait fifteen minutes before calling the police. The robber then turned off the light, closed the door, and left.

Following the robbery, the Columbia, Missouri police department contacted James Kimbrow, an investigator with the Butler County prosecutor in Poplar Bluff, Missouri, and asked him if he could locate appellant as part of an investigation of the Nowell's robbery. The next morning, when Kimbrow met with appellant and told him that the Columbia police had inquired about him with respect to the robbery at Nowell's Grocery, appellant—according to Kimbrow—"turned white as a sheet."

Kimbrow returned to his office and called the Columbia police, reporting that appellant had seemed nervous when told of the police inquiry. As a result of this information, the Columbia police informed Kimbrow that they were sending three detectives to join him, and they wanted him to re-establish contact with appellant.

When the Columbia detectives arrived in Poplar Bluff, Kimbrow located an informant who told him of a rooming house where appellant could be found. While the three detectives waited outside in a car, Kimbrow and the informant met inside the rooming house and knocked on the door of the room where appellant was staying under an assumed name. Nobody answered the door when they knocked, but Kimbrow looked through a crack in the door and saw appellant lying on a bed in the room.

Shortly thereafter, a young girl came out into the hallway and told Kimbrow and the informant that, if they wanted appellant to come out, to tell him that they have "a girlfriend and a bottle." The informant hollered words to that effect through the door, after which appellant finally opened the door to his room.

Testifying at trial and at a hearing on the suppression of evidence, Kimbrow described the events that followed. Kimbrow stated that he then went into appellant's room and asked appellant "if he would come and go with me." According to Kimbrow, appellant voluntarily agreed to go with Kimbrow. Kimbrow said that, in the past, appellant had "always been real good" about going to Kimbrow's office, which was in the basement of the courthouse.

At this point, Kimbrow and appellant left the rooming house and got into Kimbrow's car. The three detectives were sitting in the back seat of the car, and appellant sat in the front seat on the passenger's side. According to Kimbrow, appellant was not searched, handcuffed, or restrained in any way. Nor was appellant formally placed under arrest before they got to the courthouse.

When the car arrived at the courthouse, one of the detectives jumped out of the car and retrieved a wallet which the detective had seen appellant throw from the car as they approached the courthouse. After the wallet was recovered, it was discovered that the wallet contained over three hundred dollars in cash. Kimbrow testified that the amount was significant because Kimbrow "knew Mr. Hicks never had any money because he borrowed off me." At this point, appellant was placed under arrest.

At the time of his arrest, appellant was wearing clothing which was similar to the clothing worn by the robber of Nowell's. Also, appellant fit the description of the robber in terms of his race, height and age.

After his arrest, appellant made an oral confession of his involvement in the robbery. Appellant stated that he had sat in a truck outside Nowell's Grocery Store with his brother Terry Hicks and a man named Gene Winberry. Appellant then went inside the store, but became nervous and came back outside. However, his brother and Winberry ordered him back inside, so appellant returned to the store and told an employee "to open the safe or he'd blow his head off." Appellant then took the money and returned to the truck parked outside.

At trial, appellant testified that he was at the house of his girlfriend, Vicki Thompson, on the night of the robbery. Thompson testified that appellant was with her at her home from 6:00 p.m. until midnight on the night of the robbery. Appellant also stated that he was inebriated when he was picked up by Kimbrow and the detectives.

Appellant testified that he threw his wallet from the car window because he was afraid the police would take the money it contained, which he needed to pay off a fine. Appellant also testified that he made the confession in order to play an April Fool's joke on the authorities, and because he was an alcoholic and he figured that, if he told them what they wanted to hear, they would let him go home where he could continue drinking.

■ Appellant claims that the trial court erred in overruling his motion to suppress, and in admitting his oral confession into evidence, on the grounds that said confession was the result of an unlawful arrest. According to appellant, he was arrested at the rooming house when Kimbrow asked him to go with him, and when appellant was placed in the police car with the three detectives. Appellant claims that such an arrest was unlawful, for at that time, there was neither a warrant nor probable cause for arresting appellant.

Appellant cites a number of cases in support of his contention that he was placed under arrest at the rooming house. In particular, appellant relies on *State v. Kimball*, 613 S.W.2d 932 (Mo.App.1981) as being determinative of the outcome in the case at bar. In *Kimball*, a robbery suspect's vehicle was stopped on the street, defendant was asked or ordered to get out of the car, and within moments he was surrounded by six armed police officers. The court found that the defendant was arrested at that time, noting that "no reasonable person could have entertained the faintest notion, much less a belief, that he was free to depart." *Id.* at 938. Appellant claims that because, in the case at bar, he was placed in a car with four law enforcement officers, he was placed in the same kind of inherently coercive situation as

Kimball, where no reasonable person would believe that he was free to depart.

We disagree with appellant, and find that the case under review is closer in its facts to *State v. Spivey*, 710 S.W.2d 295 (Mo. App.1986), and *State v. Sherrard*, 659 S.W. 2d 582 (Mo.App.1983), where, in similar circumstances, the court found that an arrest had not occurred. In *Spivey*, the court found that a defendant's freedom of movement was not restrained and that the defendant voluntarily accompanied police officers to the police station. No "arrest" occurred, where two police detectives went to the place of employment of the defendant, a prelingually deaf person, identified themselves to defendant, displayed their homicide division badges and wrote a note saying "[w]ould you come with us, someone wants to talk with you at homicide," where defendant complied and went with them to the police station. Similarly, in *Sherrard*, the court held that where police officers told a defendant at his home that they wanted to talk about a reported shooting and asked him to accompany them to the police station, to which the defendant voluntarily agreed, no "arrest" occurred at the home.

In the case at bar, Kimbrow located appellant at appellant's rooming house, and Kimbrow asked appellant "if he would come and go with me" to Kimbrow's office. Appellant voluntarily left with Kimbrow, which, according to Kimbrow, appellant had done a number of times in the past. By his own admission, appellant himself did not think he was under arrest when he left the rooming house, as he testified at trial that Kimbrow "didn't say I was under arrest" and that, as appellant understood the situation, Kimbrow simply wanted "to talk to me a few minutes" at Kimbrow's office. Furthermore, appellant was not searched, handcuffed, or restrained in any way when he left the rooming house.

Thus, given the circumstances presented in the case at bar, we then find that here— just as in *Spivey* and *Sherrard*—no "arrest" occurred when appellant accompanied Kimbrow to his office for questioning. We do not find here the "inherently coercive" situation described in *Kimball*.

■ In further support of his claim that his departure from the rooming house constituted an "arrest," appellant argues that his decision to leave with Kimbrow was not voluntary, because at that time appellant was intoxicated and thus in a condition that precluded his refusal of Kimbrow's request. In response to appellant's argument, we should first point out that appellant's claims of intoxication are not corroborated by Kimbrow, who testified that he did not notice that appellant was drunk. However, even assuming, *arguendo*, that appellant was intoxicated at the time he left the rooming house, that does not render his actions involuntary. *See State v. Gullett*, 606 S.W.2d 796, 807 (Mo.App.1980) (intoxication at the time of making a statement or confession does not, in the absence of mania, render the statement involuntary).

Appellant also argues that, even if his departure from the rooming house was not itself an "arrest," the formal arrest which followed his throwing away his wallet was an unlawful arrest. According to appellant, his discarding of the wallet did not establish probable cause for his arrest, and consequently said arrest was illegal, and any evidence obtained thereafter should have been suppressed.

The lawfulness of a warrantless arrest turns on whether the arresting officers acted with probable cause. *State v. Stokes*, 710 S.W.2d 424, 426 (Mo.App.1986). Probable cause exists where there is "knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed an offense." *State v. Kroll*, 682 S.W.2d 78, 82 (Mo.App. 1984). In determining whether there is sufficient justification for an arrest, all the information in the possession of the police and the reasonable inferences that can be drawn therefrom are to be considered. *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975). It is not necessary that the information rise to the level of that which would be necessary to sustain a conviction; it need only be such as would cause a reasonably prudent person to form a belief. *State v. Reasonover*, 714 S.W.2d 706, 717 (Mo.App.1986).

In this case, the arresting officers were aware of a number of facts and circumstances linking appellant to the robbery, and taken together, these facts were sufficient to lead a reasonably prudent person to believe that appellant had committed an offense. Those facts include the following. When Kimbrow told appellant of the inquiry from the Columbia police department, appellant appeared nervous and "turned white as a sheet." Also, appellant was staying at the rooming house under an assumed name. Further, appellant fit the description of the robber in terms of his race, height, and age, and the clothing he was wearing at the time of the arrest was similar to the clothing worn by the robber. Other relevant facts include the fact that appellant had a prior criminal record, and that Kimbrow, after observing the more than three hundred dollars in appellant's wallet, knew that "Mr. Hicks never had any money because he borrowed off me."

In addition, it is clear that suspicious conduct and deceptive behavior of an accused can give rise to an inference of his guilty knowledge of a crime, *State v. Wells*, 729 S.W.2d 591, 593 (Mo.App.1987), and in the case at bar, appellant's actions implied a guilty knowledge of the robbery at Nowell's grocery store. Appellant turned "white as a sheet" when told of the Columbia police inquiry, and he registered at the rooming house under an assumed name. In addition, as he was being driven to the courthouse, appellant threw his wallet from the car window, and such destruction of evidence by a defendant shows consciousness of guilt. *See State v. Freeman*, 667 S.W.2d 443, 449 (Mo.App.1984).

■ The facts recounted above constitute probable cause for arresting appellant, and therefore, the trial court did not err in overruling appellant's motion to suppress, and in admitting appellant's subsequent oral confession into evidence. The judgment of the trial court is affirmed.