**STATE of Missouri, Respondent,**

v.

**Regis C. MURDOCK, Respondent.**

**Regis C. MURDOCK, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 50453, WD 52006.**

Missouri Court of Appeals,
Western District.

Aug. 13, 1996.

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

Regis C. Murdock appeals from the trial court's judgment finding him guilty of one count of robbery in the first degree, § 569.020, RSMo 1986,[1] one count of forcible sodomy, § 566.060, RSMo Supp.1993, and one count of assault in the first degree, § 565.050. Murdock was sentenced as a prior offender to thirty years imprisonment for the robbery conviction, thirty years imprisonment for the sodomy conviction and life imprisonment for the assault conviction, to be served consecutively. On appeal, Murdock

---

1. All statutory references are to RSMo 1986, unless otherwise indicated.

claims that (1) the trial court erred in over-ruling his motion for judgment of acquittal because the sodomy conviction was not supported by sufficient evidence; (2) the trial court erred in admitting his statement into evidence because the statement was not voluntarily given; and (3) the motion court erred in denying his Rule 29.15 motion because trial counsel was ineffective for failing to object to certain testimony.

Judgment is affirmed, both as to the conviction and as to the denial of postconviction relief.

The evidence is viewed in the light most favorable to the verdict. In the early morning hours of April 18, 1994, Regis Murdock, seventeen years old, and Paul Strange, nineteen years old, were out looking for a way "to get some money" in Jefferson City, where they both lived. After waiting unsuccessfully outside of a Pizza Hut for someone to leave the store with money to be deposited, they began walking to Strange's car which they had parked some distance away.

On the way to the car, Murdock started rummaging through some automobiles in a parking lot. He found a 9 millimeter automatic pistol and two pairs of leather gloves in an unlocked vehicle. Murdock kept the 9 millimeter pistol and gave his own .22 caliber pistol to Strange. They also replaced the rubber gloves they were wearing with the leather gloves. They continued to walk back to their car. At some point, Murdock and Strange decided to sit in a grassy area and smoke a cigarette. While resting together, they noticed a light come on in a nearby house.

They walked closer to the house and looked in a window. They observed an elderly woman, Marjorie Morse, walking around inside the house. After cutting the telephone line, they broke into Mrs. Morse's house. The two men began searching the house for money and valuables. Murdock forced Mrs. Morse to the basement pressing a pistol to the back of her head. After searching the basement, the three returned upstairs. Strange searched the remainder of the house, while Murdock took Mrs. Morse to her bedroom. Murdock wrapped a cord around Mrs. Morse's neck and jerked her backward, causing her to fall backward on the bed. Murdock then hit Mrs. Morse repeatedly with the butt of his pistol. He removed the cord from around her neck, placed a blindfold over her face and beat her with other objects. Murdock next ordered Mrs. Morse to lie flat on the bed and he inserted a candle forcefully into her vagina. He also forcefully inserted another object into her vagina, which she described as "very cold," and she thought might have been his pistol.

Murdock then slit Mrs. Morse's throat with a knife. After tying Mrs. Morse, Murdock then forcefully stabbed her in the chest. Murdock and Strange then left. Mrs. Morse finally freed herself from the bindings on her ankles. She made her way to a neighbor's house, stumbling and falling along the way. She received emergency medical treatment, and very fortunately, if not miraculously, was able to appear and testify at trial.

After they left Mrs. Morse's house, Murdock and Strange eventually drove back to the trailer where they lived. Another resident of the trailer, Shane Otto, noticed that the men were acting nervous. In response to Otto's question about what had happened, Murdock responded that he had just "killed an old lady." Murdock had Otto drive him to the river where he threw away jewelry that he had stolen from Mrs. Morse.

On April 22, 1994, Murdock and Strange were asked to come to the Jefferson City Police Department for an interview. An officer read Murdock his *Miranda* rights. Murdock decided to talk to police. He initially denied any involvement in the crimes involving Mrs. Morse. He eventually made a statement detailing the events of the evening, but blamed Strange for the sodomy and the assault.

At trial, Mrs. Morse testified. She could not positively identify Murdock. Strange and Otto testified as to Murdock's involvement. Murdock's confession was introduced. Murdock did not testify at trial. He presented the testimony of a psychologist, Dr. Gerald Vandenberg, who opined that Murdock was suffering from "Organic Personality Syndrome," which made him incapable of

appreciating the nature, quality, and wrongfulness of his conduct at the time he committed the crimes. The State presented the testimony of Dr. Sam Pariwatikar to rebut Vandenberg's conclusions.

The jury found Murdock guilty on all three counts. On April 12, 1995, Murdock filed a *pro se* Rule 29.15 motion. After an evidentiary hearing, the motion court denied Murdock's Rule 29.15 motion. Murdock now appeals.

### Forcible Sodomy

■ In Point I, Murdock claims that the trial court erred in overruling his motion for judgment of acquittal, in submitting the sodomy instruction to the jury and in entering judgment on the jury's verdict of guilty, because the evidence was insufficient to support the conviction for forcible sodomy. Murdock claims that the evidence failed to establish that Murdock acted with the intent to arouse or gratify sexual desire when he inserted objects into Mrs. Morse's vagina. Murdock suggests that his actions failed to show that he had any sexual desire for Mrs. Morse, but only showed that he committed an assault by placing items in her vagina.

■ In addressing a challenge to the sufficiency of the evidence, the evidence together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict, ignoring evidence to the contrary. *State v. O'Brien,* 857 S.W.2d 212, 215–16 (Mo. banc 1993). This court will affirm the trial court's judgment if there is sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

■ Murdock was charged with one count of forcible sodomy, in violation of § 566.060, RSMo Supp.1993, which provides: "A person commits the crime of sodomy if he has deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion." The term "deviate sexual intercourse" is defined in § 566.010 as "any act involving the genitals of one person and the mouth, tongue, hand or anus of

another person." It has been held that the term "deviate sexual intercourse" implies an intent to arouse or gratify sexual desire, and does not contemplate an innocent touching. *State v. Fields,* 739 S.W.2d 700, 704 (Mo. banc 1987). However, when direct evidence is presented that a defendant committed an illicit act, "the proof of the act ordinarily gives rise to an inference of the necessary *mens rea." State v. Conley,* 873 S.W.2d 233, 237 (Mo. banc 1994).

Mrs. Morse testified that Murdock had taken her into her bedroom and made her lie on the bed. He blindfolded her and then stuck a candle and another object, possibly his gun, into her vagina. Any reasonable juror could infer from this evidence that Murdock had the intent to arouse or gratify sexual desire from his actions. Thus, the trial court did not err in denying Murdock's motion for judgment of acquittal or in submitting the verdict-directing instruction for sodomy to the jury. Point I is denied.

### Statement to Police

In Point II, Murdock asserts that the trial court erred in overruling his motion to suppress the statement he made to police officers and admitting the statement into evidence over his objection because the statement was taken in violation of Murdock's right to be free from an unreasonable search and seizure and due process of law, as guaranteed by the fourth, fifth and fourteenth amendments to the United States Constitution and Article I, §§ 10 and 15 of the Missouri Constitution. Murdock contends that he was arrested (by limitations being placed upon his freedom) without probable cause and the statement taken by police was a result of an illegal arrest.

■ This court should affirm the ruling of the trial court on a motion to suppress if the evidence is sufficient to sustain its findings. *State v. Feltrop,* 803 S.W.2d 1, 12 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). In reviewing the trial court's ruling on a motion to suppress evidence, the issue is limited to whether the court's decision is supported by substantial evidence. *Id.* Deference is given to the trial court's superior opportunity to de-

termine the credibility of witnesses. *Id.* The State bears the burden of showing by a preponderance of the evidence that the motion should be overruled. *State v. Brewster*, 836 S.W.2d 9, 11 (Mo.App.1992).

In order for a defendant to show that a statement was involuntarily given, and therefore inadmissible, he must show evidence of coercive police activity. *State v. Norton*, 904 S.W.2d 265, 271 (Mo.App.1995). A person who is asked preliminary, investigatory questions by a police officer is not considered under arrest. *Id.* Even if the individual being questioned is a suspect, this does not transform investigatory questioning into an arrest. *Id.*

In this case, the police were given information by an informant that Murdock and Strange were involved in the crimes committed on April 18. The informant had proven reliable in a previous case. The police decided to locate the men and ask them to come to the police station for voluntary questioning. An officer stopped Murdock, who was riding in his foster mother's automobile, and asked Murdock to accompany him to the police station for questioning. Murdock agreed to go to the station for questioning. Murdock asked if he could ride to the station with his foster mother. The officer told Murdock that he would rather have Murdock ride with the officers. Murdock then agreed to ride to the station with the officers. The officers testified that they did not intend to arrest Murdock at that time if he refused to go to the station for questioning. Murdock was not handcuffed nor restrained in any way. He was never informed that he was under arrest.

After arriving at the police station, Murdock was read his *Miranda* rights and signed a form acknowledging that he understood his rights. Early in the questioning, Murdock denied any involvement in the crimes. After eliciting little useful information, police told Murdock that the interview would be terminated shortly. Thereafter, Murdock admitted that he was involved in the robbery and gave the police a statement to that effect. Murdock did not request an attorney at any time during the interview.

Murdock claims that he was illegally placed under arrest without probable cause when the police officers stopped him and asked him to accompany them to the station for questioning. Murdock relies primarily on *State v. Riley*, 704 S.W.2d 691 (Mo.App. 1986). In *Riley*, police officers stopped and picked up defendant and another man one block from an accident where an automobile had been abandoned. *Id.* at 693. The officer asked the defendant to return to the scene with the officers, and the defendant consented. Once at the scene, he was identified by witnesses as an "occupant" or "passenger" of the vehicle. Defendant was then transported to the police station, where he was detained in a "holding area." There was disparity in the testimony of the officers about why Riley was being held. There was no indication he had been identified as a driver of the vehicle, and the applicable "leaving the scene" statute imposed liability only on the person driving the vehicle at the time of the collision. As part of his "booking," officers detected he had something in his mouth, which four officers caused him to spit out. The package he spit out contained capsules of heroin. Defendant contended the capsules should have been suppressed as evidence because his arrest was invalid because the police had no probable cause to believe he had committed a crime. The Court of Appeals agreed, and held that the trial court should have suppressed the evidence. The court reasoned that defendant was actually under arrest when he submitted to the police request that he go with them to the station. *Id.* at 693–94.

*Riley* is not applicable to the facts of this case. In that case, the defendant was not asked to come to the station merely for an investigative interview. Riley and his companion apparently were not told *why* the officers wanted them to come to the station. Nor, apparently, did the officers have a clear understanding of why Riley was brought to the station. At the station, rather than proceeding with an interview, the officers placed Riley in a holding area, and then undertook to conduct the standard procedures for booking Riley. *Riley*, 704 S.W.2d at 693. Unlike the circumstances in *Riley*, the evidence here does not show coercion on the part of the officers nor any restraint of Murdock. The

officers testified that Murdock came voluntarily to the station and that he was free to leave the questioning at any time. When the police are merely engaged in investigative activities, a request for an interview at the station is not an arrest. *State v. Hicks,* 755 S.W.2d 242 (Mo.App.1988). In *Hicks,* an investigating officer located defendant, a suspect, at a rooming house, and asked defendant to accompany him to an investigator's office for questioning. Defendant voluntarily left with the investigator. This court found that no arrest occurred since the situation was not "inherently coercive." *Id.* at 244.

In *State v. Brewster,* 836 S.W.2d 9 (Mo. App.1992), two officers were looking for defendant based upon information received from an anonymous informant. The officers located defendant at a house and asked defendant to accompany them to the police station for questioning about the shooting of a cab driver. Defendant agreed to go with the officers. The court found that defendant accompanied the officers voluntarily and was not illegally detained. *Id.* at 11. *See also State v. Spivey,* 710 S.W.2d 295 (Mo.App. 1986) (officers requested that defendant come with them to the station because someone at homicide "wanted to talk to him.")

 Here, the evidence indicated that Murdock voluntarily accompanied the officers to the police station for the limited purpose of an investigative interview. It is true that Murdock indicated he preferred to ride to the station with his foster mother, and that the police said that they would rather have him ride with them. The court could easily have found that Murdock, in his desire to act in a fashion consistent with innocence, believed he would improve his chances of persuading the police of his innocence by being helpful and cooperative. We defer to the trial judge's ability to gauge the credibility of the witness. We detect no error in the trial court's conclusion that Murdock complied voluntarily. Thus, the trial court did not err in denying the motion to suppress and in allowing Murdock's statement to be admitted into evidence at trial. Point II is denied.

### Ineffective Assistance of Counsel

In Point III, Murdock argues that the motion court clearly erred in denying his motion for post-conviction relief because he was denied his right to effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution. Murdock claims he was denied effective assistance of counsel in that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances by failing to object to testimony concerning the theft of the gun from the unattended vehicle prior to the incident at Mrs. Morse's house. Murdock claims that the testimony constituted inadmissible evidence of other crimes.

 Appellate review of the denial of a Rule 29.15 motion is confined to the issue of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *State v. Parker,* 886 S.W.2d 908, 933 (Mo. banc 1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). The motion court's determination is clearly erroneous only if after reviewing the entire record, the appellate court has a definite and firm impression that a mistake has been made. *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994).

 To establish ineffective assistance of counsel, defendant must satisfy the *Strickland* two-prong test, showing (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and (2) that defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Review begins with the presumption that counsel is competent and movant has the "heavy burden" of proving counsel's ineffectiveness by a preponderance of the evidence. *Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Finally, appellant must show that a different outcome would have resulted but for counsel's errors in order to show that he was prejudiced by such errors. *Sanders v. State,* 738 S.W.2d 856, 860–61 (Mo. banc 1987).

■ Ineffective assistance of counsel claims relating to "trial strategy" generally do not provide a basis for post-conviction relief. *State v. Johnson*, 901 S.W.2d 60, 63 (Mo. banc 1995). Counsel is vested with wide latitude in defending his client and should use his best judgment in matters regarding trial strategy. *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991), *cert. denied*, 502 U.S. 1047, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992). Additionally, courts reviewing such claims should refrain from employing hindsight when reviewing counsel's conduct at trial. *State v. Heslop*, 842 S.W.2d 72, 77 (Mo. banc 1992), *cert denied*, 508 U.S. 921, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993).

■ The motion court found that Murdock failed to show he was prejudiced by the admission of the testimony of the owner of the vehicle from which the items were stolen because the same information was admitted into evidence through the testimony of Paul Strange without objection by Murdock. The motion court concluded that since Murdock did not contest trial counsel's failure to object to Strange's testimony, he could not show prejudice on the basis of failure to object to nearly identical testimony. We agree. We also note that Murdock failed to show that any objection to the evidence would have been meritorious. Generally, evidence of uncharged crimes is not admissible for the purpose of showing bad character or showing the propensity of a defendant to commit such crimes. *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). However, evidence of uncharged crimes may be admissible when relevant for some legitimate purpose, such as establishing motive, intent, identity, the absence of mistake or accident, or a common plan or scheme. *Id.* Also, the evidence may be admitted when it is part of the circumstances or the sequence of events surrounding the offense charged. *Id.* Such evidence is admissible to "present a complete and coherent picture of the events that transpired." *Id.* If evidence of a prior crime is so intertwined with the facts related to the pending charge that it would seem strained and unnatural to attempt to exclude such evidence, then admittance of the evidence is usually justified.

The issues of admissibility and relevancy are left to the sound discretion of the trial court. *State v. Hamilton*, 892 S.W.2d 371, 377 (Mo. App.1995).

■ The testimony of the witness that a firearm was taken from his vehicle on the night in question was relevant as an integral part of the events of the criminal assault on Mrs. Morse. The handgun was instrumental in the robbery, sodomy and assault on Mrs. Morse. To have presented the facts related to Murdock's actions that night, and to have specifically excluded the evidence of the theft of the weapon, would have seemed unnatural. This was all part of one series of events. It was not like presenting evidence of an unrelated theft which had occurred two years earlier. The State was entitled to present a complete picture of the crimes committed that night by Murdock. Any objection would have been non-meritorious. Thus, the motion court did not err in denying Murdock's Rule 29.15 motion. Point III is denied.

The judgment of conviction is affirmed. The judgment of the motion court denying Murdock's Rule 29.15 motion is affirmed.

All concur.